ALVAN MOTOR FREIGHT, INC v DEPARTMENT OF TREASURY
UNITED PARCEL SERVICE, INC v DEPARTMENT OF TREASURY

Docket Nos. 276511 and 276736. Submitted August 6, 2008, at Lansing. Decided September 23, 2008, at 9:10 a.m.

Alvan Motor Freight, Inc. (AMF), filed a petition in the Tax Tribunal challenging a determination by the Department of Treasury that the petitioner was not entitled to a use-tax exemption under MCL 205.94k(2), now MCL 205.94k(4), for trucks operated solely within Michigan but carrying freight originating from, or destined for, locations outside Michigan. The Tax Tribunal affirmed the department's determination. AMF appealed.

United Parcel Service, Inc. (UPS), filed an action in the Court of Claims against the Department of Treasury, seeking a refund of use tax paid for delivery vans purchased outside Michigan but used solely in Michigan to carry packages originating from, or destined for, other states. The court, Laura Baird, J., granted summary disposition for UPS, rejecting the department's contention that UPS was not entitled to the use-tax exemption under MCL 205.94k(2). The department appealed. The Court of Appeals consolidated AMF's appeal and the department's appeal.

The Court of Appeals *held*:

MCL 205.94k(2) provided, in part, that after December 31, 1992, and before May 1, 1999, the use tax does not apply to the storage, use, or consumption of rolling stock used in interstate commerce and purchased, rented, or leased outside of Michigan by an interstate motor carrier. It is undisputed that UPS and AMF are interstate motor carriers that operate rolling stock, i.e., qualified trucks, in Michigan. At issue is whether the rolling stock of UPS and AMF are used in interstate commerce. The term "interstate commerce," as used in more than a century of Commerce Clause litigation, refers to trade in goods or services between different states. The plain and ordinary meaning of "used in interstate commerce" is "used in the trade of goods (commerce) between different states (interstate)." Under either meaning, rolling stock that is used to carry the persons or property that are the objects of commerce from outside Michigan to a point inside Michigan, or from a point inside Michigan to a point outside

Michigan, is used in interstate commerce. The trucks of UPS and AMF need not cross state lines in order for those carriers to be entitled to the use-tax exemption under MCL 205.94k(2).

*Alvan Motor Freight* reversed and remanded for further proceedings.

*United Parcel Service* affirmed and remanded for further proceedings.

TAXATION — USE TAX — EXEMPTIONS FROM USE TAX — INTERSTATE COMMERCE — ROLLING STOCK USED IN INTERSTATE COMMERCE.

Trucks purchased, rented, or leased outside Michigan but used exclusively in Michigan for interstate commerce qualify for a use-tax exemption so long as they carry persons or property originating from, or destined for, another state; such trucks need not cross state lines to qualify for the exemption (MCL 205.94k[2], now MCL 205.94k[4]).

*Foster, Swift, Collins & Smith, P.C.* (by *Robert E. McFarland*), for Alvan Motor Freight, Inc.

*Dykema Gossett PLLC* (by *Sherrill D. Wolford* and *Kathleen McCree Lewis*) and *Richard D. Birns* and *J. Edward Goff* for United Parcel Service, Inc.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, and *Heidi L. Johnson-Mehney* and *Bruce C. Johnson*, Assistant Attorneys General, for the Department of Treasury.

Amicus Curiae:

*Robert Digges, Jr.*, and *Fraser Trebilcock Davis & Dunlap, P.C.* (by *Michael S. Ashton* and *Graham K. Crabtree*), for American Trucking Associations, Inc.

Before: MARKEY, P.J., and WHITBECK and GLEICHER, JJ.

PER CURIAM. In Docket No. 276511, petitioner Alvan Motor Freight, Inc. (AMF), appeals by right the decision of the Tax Tribunal upholding the position of the

Department of Treasury that AMF was not entitled to an exemption from taxation under § 4k of the Use Tax Act, MCL 205.91 *et seq.*, because the AMF trucks operated wholly within Michigan and so were not "used in interstate commerce" within the meaning of the exemption even though carrying freight originating from or destined for locations outside the state. MCL 205.94k(4), formerly MCL 205.94k(2) (see 1996 PA 477 and 1999 PA 70). We reverse.

In Docket No. 276736, the department appeals by right the order of the Court of Claims granting summary disposition to plaintiff United Parcel Service, Inc. (UPS), under MCR 2.116(C)(10) on its claim for a refund of use taxes paid for the years 1998 through 2000 on brown delivery vans purchased outside Michigan but used wholly within the state to carry packages from or destined for other states.[1] On the basis of United States Supreme Court precedent, the Court of Claims rejected the department's position that UPS was not entitled to the exemption because its brown delivery vans did not cross state lines. We affirm.

The common issue in these consolidated appeals is whether the "rolling stock" of AMF and UPS that never leaves the state of Michigan, but does carry freight originating from or destined for locations outside the state, is "used in interstate commerce" so as to qualify for tax exempt status under MCL 205.94k. Statutory construction presents a question of law, which this Court reviews de novo. *General Motors Corp v Dep't of Treasury*, 466 Mich 231, 236; 644 NW2d 734 (2002). This Court also reviews de novo a lower court's grant or

---

[1] UPS also claimed a partial refund of sales tax paid on four brown vans purchased in Michigan during 1999. The partial sales tax exemption employed the same pertinent language as the use tax exemption at issue and has since been repealed. See 1996 PA 576, repealed by 1999 PA 116.

denial of summary disposition. *Id.* Because the facts are not disputed, our review of the Tax Tribunal's interpretation and application of the statute to those facts is also de novo. *Id.*; *Danse Corp v Madison Hts*, 466 Mich 175, 178; 644 NW2d 721 (2002). Moreover, our review is de novo even though we give respectful consideration to the department's interpretation of the statute. *In re Complaint of Rovas Against SBC Michigan*, 482 Mich 90; 754 NW2d 259 (2008).

For the tax years relevant to these cases, MCL 205.94k provided, in part:

> (2) For taxes levied after December 31, 1992 *and before May 1, 1999*, the tax levied under this act does not apply to the storage, use, or consumption of rolling stock used in interstate commerce and purchased, rented, or leased *outside of this state* by an interstate motor carrier. . . .
>
>                   * * *
>
> (4) As used in this section:
>
>                   * * *
>
> (b) "Interstate motor carrier" means a person engaged in the business of carrying persons or property, other than themselves, their employees, or their own property, for hire across state lines, whose fleet mileage was driven at least 10% outside of this state in the immediately preceding tax year.
>
> (c) "Out-of state usage percentage" is a fraction, the numerator of which is the number of miles driven outside of this state in the immediately preceding tax year by qualified trucks used by the taxpayer and the denominator of which is the total miles driven in the immediately preceding tax year by qualified trucks used by the taxpayer. Miles driven by qualified trucks used solely in intrastate commerce shall not be included in calculating the out-of-state usage percentage.

(d) "Qualified truck" means a commercial motor vehicle power unit that has 2 axles and a gross vehicle weight rating in excess of 10,000 pounds or a commercial motor vehicle power unit that has 3 or more axles.

(e) "Rolling stock" means a qualified truck, a trailer designed to be drawn behind a qualified truck, and parts affixed to either a qualified truck or a trailer designed to be drawn behind a qualified truck. [1996 PA 477, amended effective June 25, 1999, by 1999 PA 70 (deleting the italicized language).]

No material facts are disputed in either of the cases at bar. Both UPS and AMF are "interstate motor carriers" that operate "rolling stock" in the state of Michigan. Thus, the sole issue on appeal is whether, as a matter of law, the "rolling stock" of UPS and AMF is "used in interstate commerce" so as to be exempt from use tax under MCL 205.94k.

The main goal of judicial construction of a statute is to "ascertain and to give effect to the intent of the Legislature." *United Parcel Service, Inc v Bureau of Safety & Regulation*, 277 Mich App 192, 202; 745 NW2d 125 (2007). The first step in doing this is to review the language of the statute. *Id*. If the statutory language of the statute is unambiguous, then we assume that the Legislature intended its plain meaning, and the statute must be enforced as written. *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002). "A necessary corollary of these principles is that a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Id.*; see also *Lash v Traverse City*, 479 Mich 180, 194; 735 NW2d 628 (2007) (The judiciary may not speculate regarding the Legislature's intent beyond those words expressed in the statute.) A provision in a statute "is ambiguous only if it irreconcilably conflicts with another provision,

or when it is *equally* susceptible to more than a single meaning." *Lansing Mayor v Pub Service Comm*, 470 Mich 154, 166; 680 NW2d 840 (2004) (citation and punctuation omitted; emphasis in original).

When reading a statute, we must assign to every word or phrase its plain and ordinary meaning unless otherwise defined in the statute, or unless the Legislature has used "technical words and phrases . . . [that] may have acquired a peculiar and appropriate meaning in the law." MCL 8.3a; *Ford Motor Co v Woodhaven*, 475 Mich 425, 438-439; 716 NW2d 247 (2006); *Village of Holly v Holly Twp*, 267 Mich App 461, 470; 705 NW2d 532 (2005). Furthermore, we must not read a word or phrase of a statute in isolation; rather, each word or phrase and its placement must be read in the context of the whole act. *Lansing Mayor, supra* at 167-168; *Village of Holly, supra* at 470. Consequently, this Court must consider "both the plain meaning of the critical word or phrase as well as 'its placement and purpose in the statutory scheme.' " *Sun Valley Foods Co v Ward*, 460 Mich 230, 237; 596 NW2d 119 (1999), quoting *Bailey v United States*, 516 US 137, 145; 116 S Ct 501; 133 L Ed 2d 472 (1995).

We read the words "interstate commerce" in the phrase "used in interstate commerce" in the context of its placement and part of the whole of 1996 PA 477, as amended. Specifically, the Legislature enacted a use tax exemption applicable only to an "interstate motor carrier," defined as "a person engaged in the business of carrying persons or property, other than themselves, their employees, or their own property, for hire across state lines." Further, the act recognizes that such interstate motor carriers will likely engage in business activities that occur both within and without the state of Michigan and establishes a percentage requirement

for business outside the state for the exemption to apply. In other words, the Legislature was clearly cognizant of, and capable of crafting, requirements regarding the crossing of state lines with respect to the phrase, "used in interstate commerce," but it did not. Moreover, when enacting legislation, the Legislature is presumed to be fully aware of existing laws, including judicial decisions. See *Walen v Dep't of Corrections*, 443 Mich 240, 248; 505 NW2d 519 (1993), and *Gordon Sel-Way, Inc v Spence Bros, Inc*, 438 Mich 488, 505-506; 475 NW2d 704 (1991). Thus, in light of this context, we hold that the only reasonable reading of the words "interstate commerce" as used in 1996 PA 477, as amended, is that the Legislature intended them to have the "peculiar and appropriate meaning in the law" that those words have acquired in over a century of judicial decisions applying the Commerce Clause of the United States Constitution.[2] MCL 8.3a; *Ford Motor Co, supra* at 439; *Van Buren Charter Twp v Garter Belt, Inc*, 258 Mich App 594, 606-607; 673 NW2d 111 (2003).

Caselaw spanning over 100 years establishes that the term "interstate commerce" has acquired a technical meaning in the law such that the phrase "used in interstate commerce" refers to trade in goods or services between different states. See *The Daniel Ball*, 77 US (10 Wall) 557, 565; 19 L Ed 999 (1871) (steamer engaged in interstate commerce, even if it never left the

---

[2] The United States Constitution grants Congress the power: "To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." US Const, art I, § 8, cl 3. "The Commerce Clause 'prohibits discrimination against interstate commerce . . . and bars state regulations that unduly burden interstate commerce.'" *Rayovac Corp v Dep't of Treasury*, 264 Mich App 441, 443; 691 NW2d 57 (2004), quoting *Quill Corp v North Dakota*, 504 US 298, 312; 112 S Ct 1904; 119 L Ed 2d 91 (1992). This, of course, is all the more reason for the Legislature to be mindful of the meaning that the words "interstate commerce" have acquired through Commerce Clause litigation.

confines of the state, so long as it carried goods destined for, or originating from, another state); *Northern Pacific R Co v Washington ex rel Atkinson*, 222 US 370, 375; 32 S Ct 160; 56 L Ed 237 (1912) (train moving solely within a single state was engaged in interstate commerce because it hauled goods originating from, or destined for, locations outside the state, "despite the fact that it may also have been carrying some local freight"); *United States v Yellow Cab Co*, 332 US 218, 228; 67 S Ct 1560; 91 L Ed 2010 (1947) ("When persons or goods move from a point of origin in one state to a point of destination in another, the fact that a part of that journey consists of transportation by an independent agency solely within the boundaries of one state does not make that portion of the trip any less interstate in character."); *Martin v Airborne Express*, 16 F Supp 2d 623, 628 (ED NC, 1996) (carrier moving goods solely within a state is moving interstate commerce if part of a larger travel scheme evincing continuity of movement between states). Courts have consistently found that even if a vessel or vehicle never leaves a state, it is "used in interstate commerce" if it carries goods moving in a continuous stream from an origin in one state to a destination in another. See *The Daniel Ball, supra* at 565; *Northern Pacific R Co, supra* at 375; *Yellow Cab Co, supra* 228; *Auclair Transportation, Inc v State*, 113 NH 231, 233; 305 A2d 662 (1973) (motor transportation conducted solely within one state may be interstate commerce if it is part of a continuous movement in interstate commerce).

On the basis of the foregoing, we conclude that the Court of Claims did not err by relying on *The Daniel Ball* and its progeny to rule that the "rolling stock" of UPS was "used in interstate commerce" within the meaning of the use tax exemption of MCL 205.94k. Moreover, we would reach the same conclusion were we

not to ascribe to the Legislature the well-established meaning of "interstate commerce" utilized in over a century of judicial decisions.

The statute does not define the phrase "used in interstate commerce." When the Legislature does not define terms in a statute, courts may consult a dictionary to learn their "common and approved usage." MCL 8.3a; *Halloran v Bhan*, 470 Mich 572, 578; 683 NW2d 129 (2004). The *Random House Webster's College Dictionary* (1997) defines the adjectival form of "interstate" as "connecting or involving different states." The word "interstate" describes "commerce." The *Random House Webster's College Dictionary* defines "commerce" as "an interchange of goods or commodities between different countries or between areas of the same country; trade." Giving the phrase its plain and ordinary meaning, the words "used in interstate commerce" in MCL 205.94K(2) mean rolling stock used in the trade of goods (commerce) between different states (interstate). Accordingly, we conclude that the phrase "used in interstate commerce" is unambiguous. Any rolling stock that is used to carry the persons or property that are the objects of commerce from a point outside the state to a point inside the state or from a point inside the state to a point outside the state is "used in interstate commerce." The plain language of the statute contains no requirement that the implements of moving the objects of commerce from point to point, i.e., the rolling stock, must also cross state lines. Consequently, we must reject the department's argument to the contrary because "a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Roberts, supra* at 63. Both UPS and AMF qualify for the use tax exemption because their rolling stock, despite not leaving the state, is

used in the trade of goods between different states: both the UPS brown vans and the AMF delivery trucks transport freight originating from or destined for locations outside Michigan.[3]

The department's other arguments also fail. The department argues that while tax statutes are generally construed against the government, tax exemptions are to be strictly construed in favor of the taxing unit. See *JW Hobbs Corp v Dep't of Treasury*, 268 Mich App 38, 43; 706 NW2d 460 (2005). Applying this principle, the department argues that its construction of the statute must be accepted because otherwise the exception will swallow the rule. But as we have discussed, whether we employ the plain ordinary meaning of the terms used in the statute or the peculiar meaning in the law of the term "interstate commerce," there is no basis for a "strict" or "liberal" construction of the statute; rather, we enforce its unambiguous terms as we must. *Roberts, supra* at 63; *United Parcel Service, Inc, supra* at 202-203.

We also find misplaced the department's reliance on *American Trucking Ass'ns, Inc v Michigan Pub Service Comm*, 545 US 429; 125 S Ct 2419; 162 L Ed 2d 407 (2005) (*ATA*), to suggest that the Court has altered the meaning of "interstate commerce" developed in *The Daniel Ball* and its progeny. In *ATA*, the Court rejected a Commerce Clause challenge to a flat fee levied on trucks that "engage in intrastate commercial operations—that is, on trucks that undertake point-to-point hauls between Michigan cities." *ATA, supra* at 431. Specifically, the two petitioners engaged in *both* interstate and intrastate shipments and argued that

---

[3] Because the pertinent language is identical, our reasoning applies equally to the partial sales tax exemption at issue in Docket No. 276736. MCL 205.54g; 1996 PA 576, repealed 1999 PA 116.

they engaged in proportionately less intrastate business than trucks that confined operations to the state of Michigan. *Id.* at 432. Thus, the petitioners argued that Michigan's flat fee discriminated against interstate carriers and imposed an unconstitutional burden upon interstate trade. *Id.* Ultimately, the Court determined that nothing about the flat assessment on intrastate activity unfairly discriminated against interstate truckers. *Id.* at 434-438. No issue was raised and decided in *ATA* regarding the meaning of "interstate commerce" or whether trucks hauling both interstate freight and intrastate freight are "used in interstate commerce." Instead, *ATA* addressed a fee on intrastate activity, hauling freight originating in Michigan and staying in this state: "Michigan imposes the flat $100 fee only upon *intrastate transactions*—that is, upon activities taking place *exclusively* within the State's borders." *Id.* at 434 (emphasis added). Nothing in *ATA* casts doubt on the meaning of "interstate commerce" as stated in *The Daniel Ball* and its progeny.

The department also argues that its interpretation of the statute is correct because the construction advanced by UPS and AMF would render part of MCL 205.94k nugatory. Specifically, the department contends that the words "rolling stock used in interstate commerce" are superfluous if all they mean is that a party claiming the exemption must be part of an interstate freight business. We disagree. In order to qualify for the exemption, a party must be an "interstate motor carrier" as defined in subsection b. The department misinterprets the effect of our reading of the statute. The phrase "rolling stock used in interstate commerce" does not mean that a carrier needs only to be part of an interstate freight business to obtain exempt status. Rather, it is possible that a vehicle is part of an interstate freight business but does not qualify for the exemption because it is not

used in interstate commerce, i.e., it carries no interstate goods or services. To qualify for the use tax exemption the rolling stock must be both used in interstate commerce *and* purchased, leased, or rented by an interstate motor carrier, as defined in subsection b. Thus, no part of the statute is rendered nugatory.

Although the department does not adopt the Tax Tribunal's analysis, we review the tribunal's reasoning in Docket No. 276511. First, the tribunal erred by relying on *Bob-Lo Co v Dep't of Treasury*, 112 Mich App 231; 315 NW2d 902 (1982), to accept the department's position that the phrase "used in interstate commerce" requires the crossing of state lines. *Bob-Lo* is inapposite because it considered a use tax exemption related to vessels engaged exclusively in interstate commerce, not rolling stock used in interstate commerce. The exemption at issue in *Bob-Lo*, adopted by 1978 PA 262, provides:

> A vessel designed for commercial use of registered tonnage of 500 tons or more, when produced upon special order of the purchaser, and bunker and galley fuel, provisions, supplies, maintenance, and repairs for the exclusive use of a vessel of 500 tons or more engaged in interstate commerce. [MCL 205.94(k), now MCL 205.94(j).]

The plaintiff corporation in *Bob-Lo* operated two pleasure steamers between points in Michigan and in Canada. The plaintiff contended that it qualified for the exemption. But a previous Michigan Supreme Court decision, affirmed by the United States Supreme Court, held that the plaintiff was engaging in *foreign* commerce.[4] *Bob-Lo Co, supra* at 242. The plaintiff argued, however, that it was also engaged in interstate commerce. The *Bob-Lo* Court disagreed for two reasons: (1)

---

[4] *People v Bob-Lo Excursion Co*, 317 Mich 686, 691; 27 NW2d 139 (1947), aff'd 333 US 28 (1948).

given the prior decision, the plaintiff's activity consti-
tuted foreign commerce and (2) the exemption was
intended to include vessels that were engaged exclu-
sively in interstate commerce. *Id.* at 244. Although the
Court's opinion incorrectly refers to *The Daniel Ball* as
involving intrastate activity, which the tribunal quotes,
the opinion also correctly states the facts and holding of
that case in the prior paragraph. *Bob-Lo Co, supra* at
244. At any rate, the *Bob-Lo* decision is inapposite
because the Court could not and did not alter United
States Supreme Court precedent, interpreted a differ-
ent statutory provision with substantially different
language from the exemption involved in the present
cases, and was decided on the basis that the activity in
*Bob-Lo* was foreign commerce, not interstate com-
merce.

We also conclude that the tribunal improperly relied
on the department's Internal Policy Directive (IPD)
2003-1 in ruling that trucks must cross state lines to be
deemed being used in interstate commerce. Generally,
courts give respectful consideration to an agency's
interpretation of a statute it executes and will not
overturn that interpretation without cogent reasons. *In
re Complaint of Rovas, supra* at 130; *By Lo Oil Co v
Dep't of Treasury*, 267 Mich App 19, 50; 703 NW2d 822
(2005). Nevertheless, an agency's interpretation that is
contrary to the statute's plain meaning is not control-
ling. *Id.*; *Catalina Marketing Sales Corp v Dep't of
Treasury*, 470 Mich 13, 23-24; 678 NW2d 619 (2004). In
this case, the department's IPD states, "If a truck or
trailer operates only in Michigan, it is not being used in
interstate commerce." In support of this interpretation,
the IPD cites the statutory definition of "interstate
motor carrier." The IPD reasons that the definition
does not depend on the percentage of freight that the
carrier may ship outside the state, but on whether the

carrier's "fleet mileage was driven at least 10% outside" of Michigan. According to the IPD, it follows that the rolling stock must also be used out of state in order to be used in interstate commerce. This reasoning is flawed because it conflates two distinct requirements of the statute: (1) that rolling stock must be "used in interstate commerce" and (2) that the party claiming the exemption must be an "interstate motor carrier" that satisfies the 10 percent criterion. The IPD improperly imports the definition of "interstate motor carrier" to the definition of "interstate commerce" to reach the incorrect conclusion that in order for rolling stock to be used in interstate commerce, it must cross state lines. As discussed already, the plain language of the statute does not contemplate this result. Because the department's IPD is contrary to the plain meaning of the statue, we have the most cogent of reasons to reject it. *In re Complaint of Rovas, supra*; *Catalina Marketing Sales Corp, supra* at 23-24.

We reverse in Docket No. 276511; we affirm in Docket No. 276736. We remand each case for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.