**Michigan Supreme Court**
**Lansing, Michigan**

# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Corbin R. Davis

HODGE v STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

Docket No. 149043.  Argued October 13, 2015 (Calendar No. 2).  Decided June 6, 2016.

Linda Hodge filed suit against State Farm Mutual Automobile Insurance Company in the 36th District Court for first-party no-fault benefits related to injuries she sustained when she was struck by a car insured by State Farm.  Hodge's complaint indicated that the amount in controversy was $25,000, which was within the district court's jurisdiction.  During discovery, State Farm came to believe that Hodge would present at trial proof of damages in excess of the district court's $25,000 jurisdictional limit.  The 36th District Court, Kenneth J. King, J., denied State Farm's motion in limine to prevent Hodge from presenting evidence of claims exceeding $25,000, and to prevent the jury from awarding damages in excess of $25,000.  At trial, Hodge did present proof of injuries exceeding $25,000, and the jury returned a verdict of $85,957.  The district court reduced the verdict to the jurisdictional limit of $25,000, and it awarded $1,769 in no-fault interest.  State Farm appealed in the Wayne Circuit Court, claiming that the amount in controversy exceeded the district court's jurisdictional limit and that capping Hodge's damages at $25,000 could not cure the defect.  The circuit court, Brian R. Sullivan, J., agreed and reversed the district court's order of judgment.  The Court of Appeals denied Hodge's application for leave to appeal.  The Supreme Court remanded the case to the Court of Appeals for consideration as on leave granted, and the Court of Appeals consolidated it with *Moody v Home Owners Ins Co*, another case that raised the same jurisdictional question.  The Court of Appeals, MARKEY, P.J., and FITZGERALD and OWENS, JJ., affirmed the circuit court's decision that the district court was divested of jurisdiction when pretrial discovery, counsel's arguments, and the evidence presented at trial pointed to damages in excess of $25,000.  *Moody*, 304 Mich App 415 (2014).  Plaintiffs in the consolidated cases appealed in the Supreme Court.  The Supreme Court initially granted leave to appeal in *Moody v Home Owners*, and held Hodge's appeal in abeyance pending the outcome in *Moody*.  The Supreme Court subsequently granted plaintiffs' motions in *Moody* to dismiss their appeals, vacated the abeyance order in *Hodge*, and granted Hodge leave to appeal two issues: (1) whether a district court is divested of its subject-matter jurisdiction when a plaintiff alleges less than $25,000 in damages but seeks more than $25,000 at trial—that is, under such circumstances, whether the "amount in controversy" exceeds $25,000, and (2) if not, whether the district court is otherwise divested of its subject-matter jurisdiction, under such circumstances, on the basis that the plaintiff acted fraudulently or in bad faith by alleging damages within the district court's jurisdiction.

In a unanimous opinion by Justice LARSEN, the Supreme Court *held*:

The "amount in controversy" is determined by the *ad damnum* clause in a plaintiff's complaint. When a complaint alleges damages not exceeding $25,000, the district court has subject-matter jurisdiction over that complaint.

A district court is not divested of its subject-matter jurisdiction over a complaint alleging an amount in controversy not exceeding $25,000, even though the plaintiff's pretrial discovery answers, counsel's arguments before trial, and evidence presented at trial, all indicate that the plaintiff's damages far exceeded the district court's jurisdictional limit. In this case, Hodge filed in district court a complaint for damages not exceeding $25,000. Pretrial conduct and the introduction of evidence at trial indicated that Hodge's damages far exceeded $25,000. However, the circuit court wrongly decided that the district court was divested of jurisdiction when the amount of damages shown exceeded $25,000. The district court was not divested of jurisdiction because the complaint claimed damages within the district court's jurisdictional limit, even though the damages actually exceeded $25,000. In the absence of bad faith, the prayer for relief controls the amount in controversy and the amount of damages a plaintiff may recover.

The Supreme Court did not address whether the allegations were pleaded in bad faith because defendant did not raise the issue.

Reversed, the district court judgment reinstated, and the case remanded to the district court for further proceedings.

Justice MARKMAN concurred with the majority's opinion in full and wrote separately to explain his view that a plaintiff pleads in bad faith when he or she alleges an "amount in controversy" consistent with the district court's $25,000 jurisdictional limit with the intention to present evidence and argument inconsistent with that amount. The question of proper jurisdiction does not end with a plaintiff's willingness to accept damages capped by the district court's jurisdictional limit. A plaintiff may gain an unfair advantage by pleading in bad faith, and the district court must divest itself of jurisdiction when a plaintiff has obtained the district court's jurisdiction by pleading in bad faith. The district court has a continuing obligation to be vigilant in identifying bad-faith conduct, and it must be prepared to question sua sponte its own jurisdiction at any stage of the proceeding.

©2016 State of Michigan

# OPINION

Chief Justice:          Justices:
Robert P. Young, Jr.   Stephen J. Markman
                       Brian K. Zahra
                       Bridget M. McCormack
                       David F. Viviano
                       Richard H. Bernstein
                       Joan L. Larsen

FILED  June 6, 2016

STATE OF MICHIGAN

SUPREME COURT

LINDA HODGE,

      Plaintiff-Appellant,

v

      No. 149043

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Defendant-Appellee.

BEFORE THE ENTIRE BENCH

LARSEN, J.

This case involves the proper application of MCL 600.8301, which grants the district court "exclusive jurisdiction in civil actions when the amount in controversy does not exceed $25,000.00." For at least 160 years, Michigan courts have held that the

allegations in the complaint establish the amount in controversy.[1] We affirm that principle today.

This case arises out of a lawsuit for no-fault damages filed in the 36th District Court. Plaintiff Linda Hodge was struck by a car in Detroit and sustained serious injuries. She brought this suit for first-party no-fault benefits against defendant State Farm Mutual Automobile Insurance Company, which insured the driver who struck her. She sought damages for her medical expenses, loss of wages, and attendant-care needs. In two separate parts of her complaint, Hodge stated that she sought damages "not in excess of $25,000."

During discovery, State Farm came to believe that Hodge would present at trial proof of damages in excess of $25,000. Such proofs, in State Farm's view, would take the "amount in controversy" above the district court's jurisdictional limit. State Farm, therefore, filed a motion in limine, seeking to prevent Hodge from presenting evidence of claims exceeding $25,000 and to prevent the jury from awarding damages above that limit. The district court denied the motion.

At trial, Hodge did present proof of injuries exceeding $25,000, including more than $150,000 in attendant-care services alone. At the conclusion of the trial, the jury returned a verdict of $85,957. The district court then reduced its judgment for Hodge to $25,000 in damages and $1,769 in no-fault interest.

State Farm appealed in the Wayne Circuit Court, claiming that the amount in controversy exceeded the district court's jurisdictional limit and that capping Hodge's

---

[1] See *Strong v Daniels*, 3 Mich 466, 473 (1855).

recovery at $25,000 could not cure the defect. The circuit court agreed and reversed the district court's order of judgment.[2]

The Court of Appeals initially denied plaintiff's application for leave to appeal. After this Court remanded for consideration as on leave granted,[3] the Court of Appeals consolidated this case with another brought in district court by plaintiff's counsel that raised the same jurisdictional question. In the consolidated appeal, the Court of Appeals affirmed the circuit court's decision, holding that although the district court's jurisdiction "will most often be determined by reviewing the amount of damages or injuries a party claims in his or her pleadings,"[4] the district courts here were divested of jurisdiction when the "pretrial discovery answers, the arguments of [plaintiff's] counsel before trial and the presentation of evidence at trial," pointed to damages in excess of $25,000.[5]

The plaintiff in each of the consolidated cases sought leave to appeal in this Court. We initially granted leave to appeal in the companion case, *Moody v Home Owners*,[6] and held this case in abeyance pending our decision in *Moody*.[7] However, this Court subsequently granted the plaintiffs-appellants' motion to dismiss their own appeal in

---

[2] *Hodge v State Farm Mut Auto Ins Co*, unpublished order of the Wayne Circuit Court, issued February 1, 2012 (Docket No. 10-012109-AV).

[3] *Hodge v State Farm Mut Auto Ins Co*, 493 Mich 937 (2013).

[4] *Moody v Home Owners Ins Co*, 304 Mich App 415, 430; 849 NW2d 31 (2014).

[5] *Id*.

[6] *Moody v Home Owners Ins Co,* 497 Mich 866 (2014).

[7] *Hodge v State Farm Mut Auto Ins Co*, 853 NW2d 334 (Mich, 2014).

3

*Moody*.[8]  We then vacated our abeyance order and granted leave to appeal in this case, limited to two issues:

> (1) whether a district court is divested of subject-matter jurisdiction when a plaintiff alleges less than $25,000 in damages in his or her complaint, but seeks more than $25,000 in damages at trial, i.e., whether the "amount in controversy" exceeds $25,000 under such circumstances . . . and, if not, (2) whether such conduct nevertheless divests the district court of subject-matter jurisdiction on the basis that the amount alleged in the complaint was made fraudulently or in bad faith.[9]

***** 

The 1963 Michigan Constitution, art 6, § 1, establishes the circuit court as a "trial court of general jurisdiction," and authorizes the Legislature to establish courts of limited jurisdiction.  The Legislature exercised this constitutional authority in 1968 by creating the district court.[10] MCL 600.8301(1) establishes the district court's limited jurisdiction:

> The district court has exclusive jurisdiction in civil actions when the amount in controversy does not exceed $25,000.00.[11]

---

[8] *Moody v Home Owners Ins Co*, 858 NW2d 462 (Mich, 2015).

[9] *Hodge v State Farm Mut Auto Ins Co*, 497 Mich 957 (2015).

[10] MCL 600.8101, as enacted by 1968 PA 154.

[11] When the Legislature established the district court in 1968, it set the court's jurisdictional limit at $3,000.  See 1968 PA 154.  The Legislature has twice raised the jurisdictional limit, to $10,000 in 1971, see 1971 PA 148, and to $25,000 in 1996, see 1996 PA 388.

4

The plain language of MCL 600.8301(1), read in conjunction with art 6, § 1 and MCL 600.605,[12] establishes that, in civil actions where no other jurisdictional statute applies, the district court is limited to deciding cases in which the amount in controversy does not exceed $25,000.[13] The district court, therefore, may not award damages in excess of that amount.[14] The question before this Court is how to determine the "amount in controversy": by the pleadings or by the proofs at trial?

Our cases have long held that courts are to determine their subject-matter jurisdiction by reference to the pleadings. As far back as 1855, when determining whether the circuit court or the justice of peace had jurisdiction over a dispute,[15] this

---

[12] "Circuit courts have original jurisdiction to hear and determine all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state."

[13] The 1963 Michigan Constitution, art 6, § 1 dictates that the circuit court is to be the only court of general jurisdiction, but that the Legislature may establish courts of limited jurisdiction. The Legislature slightly restricted the circuit court's jurisdiction in MCL 600.605 by removing the circuit court's original jurisdiction in cases "where exclusive jurisdiction is given in the constitution or by statute to some other court . . . ." The Legislature granted such exclusive jurisdiction to the district court in MCL 600.8301(1). However, because the Legislature only has the authority to establish courts of limited jurisdiction, the district court's jurisdiction is limited to the explicit grant of Chapter 83 of the Revised Judicature Act of 1961. See MCL 600.8301 *et seq*.

[14] See *Zimmer v Schindehette*, 272 Mich 407, 409; 262 NW 379 (1935) (declaring void a judgment rendered by a justice of the peace that was in excess of his jurisdiction). See also *Clohset v No Name Corp (On Remand)*, 302 Mich App 550, 567; 840 NW2d 375 (2013) ("We are cognizant of the fact that, generally speaking, a district court cannot render a judgment that exceeds its jurisdictional limit.").

[15] The 1850 Michigan Constitution, art 6, § 18, specified that "justices of the peace shall have exclusive jurisdiction to the amount of one hundred dollars . . . ." The 1908 Michigan Constitution had a similar clause. See 1908 Michigan Constitution, art 7, § 16.

5

Court held that "jurisdiction must be determined . . . , where it depends on amount, by the sum claimed in the declaration or writ."[16] This "well settled" rule would apply, the Court surmised, even if the plaintiff presented proof of damages, or the jury returned a verdict, exceeding the court's jurisdictional limit.[17] Neither the parties nor our own research has revealed any case deviating from this common-law rule.[18]

---

[16] *Strong*, 3 Mich at 472. This rule appears to be even older than *Strong*. The Court in *Strong* noted that even before the adoption of the 1850 Constitution, at issue in that case, "it was never doubted, that the test of jurisdiction was the amount claimed in the plaintiff's writ." *Id*. at 470.

[17] *Id*. at 473 ("[T]he justice will not be ousted of his jurisdiction by the jury returning a verdict, or by proof of damages beyond his jurisdiction.").

[18] We note that the federal courts also apply this principle. See, e.g., *St Paul Mercury Indem Co v Red Cab Co*, 303 US 283, 288; 58 S Ct 586; 82 L Ed 845 (1938) ("The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that . . . the sum claimed by the plaintiff controls if the claim is apparently made in good faith."). Several other states are in accord. See, e.g., *Brunaugh v Worley*, 6 Ohio St 597, 598 (1856) ("The jurisdiction of the court of common pleas depends upon the amount claimed in the petition."); *Wagner v Nagel*, 23 NW 308, 309 (Minn, 1885) ("It is well settled in this court that where the jurisdiction of a court depends upon 'the amount in controversy,' this is determined by the amount *claimed*."); *Sellery v Ward*, 21 Cal 2d 300, 304; 131 P 2d 550 (1942) ("Where the action is brought in good faith and the cause of action stated is within the jurisdiction of the court in which it is commenced, the mere fact that the judgment is for less than the jurisdictional amount of that court does not establish that it was without jurisdiction."); *Brannon v Pacific Employers Ins Co*, 148 Tex 289, 294; 224 SW 2d 466 (1949) ("It is a fundamental rule that in determining the jurisdiction of the trial court, the allegations of the petition made in good faith are determinative of the cause of action."); *Holmquist v Spinelli*, 139 Conn 429, 431; 94 A 2d 621 (1953) ("From the earliest times in this state, and in a long line of cases, it has been held that the amount of the matter in demand is to be discovered only by reference to the complaint."); *White v Marine Transport Lines, Inc*, 372 So 2d 81, 84 (Fla, 1979) ("[T]he good faith demand of the plaintiff at the time of instituting suit determines the ability of the particular court to entertain the action.").

Nor is there any reason to believe that the Legislature intended to depart from this well-settled practice when it created the district court and established by statute the monetary limits on its jurisdiction. When the Legislature, without indicating an intent to abrogate the common law,

> borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed.[19]

Here, the statute neither defines the critical term, "amount in controversy,"[20] nor in any other way suggests an intent to depart from the long-established rule that the pleadings determine the amount in controversy for purposes of the court's subject-matter jurisdiction.

---

[19] *Sekhar v United States*, 570 US ___, ___; 133 S Ct 2720, 2724; 186 L Ed 2d 794 (2013), quoting *Morissette v United States*, 342 US 246, 263; 72 S Ct 240; 96 L Ed 288 (1952). See also *In re Bradley Estate*, 494 Mich 367, 377; 835 NW2d 545 (2013) ("[W]hen the Legislature chooses to employ a common-law term without indicating an intent to alter the common law, the term will be interpreted consistent with its common-law meaning."); *Alvan Motor Freight, Inc v Dep't of Treasury*, 281 Mich App 35, 41; 761 NW2d 269 (2008) ("[W]hen enacting legislation, the Legislature is presumed to be fully aware of existing laws, including judicial decisions.").

[20] "Pursuant to MCL 8.3a, undefined statutory terms are to be given their plain and ordinary meaning, unless the undefined word or phrase is a term of art." *People v Thompson*, 477 Mich 146, 151; 730 NW2d 708 (2007). If a word or phrase is a term of art, it "shall be construed and understood according to [its] peculiar and appropriate meaning." MCL 8.3a. Although the term "amount in controversy" was not specifically used in the 1850 or 1908 Constitutions, it has long been a part of our state's legal lexicon and was used in 19th century Court opinions to indicate the amount at stake in the suit. See, e.g., *Olcott v Hanson*, 12 Mich 452, 455 (1864) (opinion of MARTIN, J.); *Truesdail v Ward*, 24 Mich 117, 120 (1871) (opinion of GRAVES, J.). That amount was always determined based upon the amount claimed in the pleadings. See, e.g., *Strong*, 3 Mich at 470.

Thus, it is not quite right to say, as did the Court of Appeals, that nothing in MCL 600.8301(1),[21] MCR 2.227(A)(1),[22] or MCR 2.116(C)(4)[23] "requires that a court limit its jurisdictional query to the amount in controversy alleged in the pleadings."[24] Instead, the statute and court rules are properly read as incorporating the long-settled rule that the jurisdictional amount is determined on the face of the pleadings.

Both the Court of Appeals and defendant urge that dictionary definitions of statutory terms support a contrary result. We find the cited references unhelpful. The Court of Appeals noted that *Black's Law Dictionary* defines "amount in controversy"[25] as "[t]he damages claimed or relief demanded by the injured party in a lawsuit."[26] But this definition is at least as consistent with the common-law rule as it is with the new rule espoused by the Court of Appeals. The dispute here is over *how* and *when* to determine

---

[21] "The district court has exclusive jurisdiction in civil actions when the amount in controversy does not exceed $25,000.00."

[22] "When the court in which a civil action is pending determines that it lacks jurisdiction of the subject matter of the action, but that some other Michigan court would have jurisdiction of the action, the court may order the action transferred to the other court in a place where venue would be proper. If the question of jurisdiction is raised by the court on its own initiative, the action may not be transferred until the parties are given notice and an opportunity to be heard on the jurisdictional issue."

[23] "The motion [for summary disposition] may be based on one or more of these grounds, and must specify the grounds on which it is based: . . . The court lacks jurisdiction of the subject matter."

[24] *Moody*, 304 Mich App at 426.

[25] When defining a legal term or phrase with a pedigree as long as "amount in controversy," little is likely to be gained from defining the individual words it comprises. Thus, we find unpersuasive the Court of Appeals' close examination of the individual words "amount" and "controversy."

[26] *Id*. at 430, quoting *Black's Law Dictionary* (9th ed).

8

the "damages claimed or relief demanded": on the pleadings or on the proofs? As a method for determining the district court's subject-matter jurisdiction, then, the *Black's* definition of "amount in controversy" is simply incomplete.

Defendant's resort to the dictionary fares no better. MCR 2.227(A)(1) allows a court to transfer an action to another tribunal when it "determines that it lacks jurisdiction of the subject matter of the action." Defendant cites multiple dictionaries for the proposition that "determines" implies the result of research or investigation. From this, defendant argues that a court may look beyond the pleadings to determine its jurisdiction. But the conclusion does not clearly follow from the premise. Even if "to determine" implies that inquiry will precede decision, neither the court rule nor common English usage conveys the sense that the inquiry need be prolonged. Just as government officials routinely "determine" age or identity by looking at photo ID, a court might well "determine" the jurisdictional amount by looking at the pleadings.

We are left, therefore, with the firm impression that in adopting MCL 600.8301, the Legislature intended to continue the longstanding practice of determining the jurisdictional amount based on the amount prayed for in the complaint. The Court of Appeals was aware of this "ancient" common-law rule,[27] but thought it inapplicable because the plaintiff pleaded "a claim for relief ostensibly within the limits of the district court's subject-matter jurisdiction but then plac[ed] in dispute through evidence and argument at trial an amount of damages much greater than the court's jurisdictional limit."[28] We recognize, as did the Court of Appeals, the potential for "artful pleading"

---

[27] *Id*. at 432.

[28] *Id*. at 433.

9

that the common-law rule creates,[29] and we have our own concerns about the implications of the rule.[30] But, absent a finding of bad faith,[31] we do not believe that

[29] *Id.*

[30] For example, an unscrupulous attorney might, without fully informing his client, limit his client's recovery to $25,000 by filing in district court but then seek attorney fees based on the full amount of damages returned by the jury, thereby sacrificing his client's interests to his own. In this regard, we remind the trial courts that an attorney is entitled to recover a *reasonable* fee for advising and representing a client in a personal protection insurance (PIP) action. MCL 500.3148(1). After calculating the baseline attorney fee figure, the trial court should consider, though is not limited to, a number of factors when determining a reasonable fee for such representation. *Pirgu v United Servs Auto Ass'n*, ___ Mich ___, ___; ___ NW2d ___ (2016) (Docket No. 150834), slip op at 13. These factors are:

> (1) the experience, reputation, and ability of the lawyer or lawyers performing the services,
>
> (2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,
>
> (3) the amount in question and the results obtained,
>
> (4) the expenses incurred,
>
> (5) the nature and length of the professional relationship with the client,
>
> (6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,
>
> (7) the time limitations imposed by the client or by the circumstances, and
>
> (8) whether the fee is fixed or contingent. [*Id.* at ___.]

Factor (3) suggests that the fees awarded must be reasonable in light of the $25,000 limit on a plaintiff's recovery in district court.

[31] This Court has held that a court will not retain subject-matter jurisdiction over a case "when . . . fraud upon the court is apparent" from allegations pleaded in bad faith. *Fix v*

these concerns affect the district court's jurisdiction, which has always been determined based on the amount alleged in the pleadings.

The common-law rule is marked not only by its longevity but by its simplicity. The *ad damnum* clause in the plaintiff's complaint is a straightforward measure of the court's jurisdiction. And its accompanying limit on recovery should deter fully-informed plaintiffs from too-readily seeking to litigate a more valuable claim in district court. By contrast, the rule articulated by the Court of Appeals renders the district court's jurisdiction contingent and uncertain and raises a host of new complications. The Court of Appeals believed that the district court in the instant case was divested of jurisdiction when the "pretrial discovery answers, the arguments of . . . counsel before trial, and the presentation of evidence at trial[] all showed that" what it deemed the "amount in controversy . . . far exceeded" the district court's jurisdictional limit.[32] But if plaintiff's proofs here were excessive, would proofs exceeding the jurisdictional limit by $1,000 be enough to divest the district court of jurisdiction? $100? $1? What would be the effect on the resources of the court system? If a plaintiff presented evidence over the

---

*Sissung*, 83 Mich 561, 563; 47 NW 340 (1890). In *Fix*, this Court dismissed the plaintiff's suit as being brought in bad faith because the amount claimed was "unjustifiable" and could not be proved. *Id*. However, beyond that holding, our cases give no indication of what would constitute bad faith sufficient to oust the court of jurisdiction. The Court of Appeals seemed concerned with plaintiffs filing in district court knowing that provable actual damages exceeded the $25,000 jurisdictional limit. See *Moody*, 304 Mich App at 431. We question, but do not decide, whether a fully-informed plaintiff acts in bad faith by filing a claim in district court, thereby limiting his own recovery to $25,000. In this case, defendant made no allegation of bad faith in the pleadings and there has been no finding of bad faith by the district court.

[32] *Moody*, 304 Mich App at 430-431.

jurisdictional cap on the last day of testimony, would the entire trial have to begin anew in the circuit court? Could a losing plaintiff conveniently "discover" and submit receipts above the jurisdictional amount on the last day of a trial that is not going his way? Would the district court be divested of subject-matter jurisdiction if a jury returned a verdict beyond the jurisdictional limit, even though neither party had argued for that amount? What would happen if a plaintiff wished to present multiple theories of recovery? None of these questions attend the longstanding common-law rule.

We, therefore, hold what the jurisprudence of this state has long established: in its subject-matter jurisdiction inquiry, a district court determines the amount in controversy using the prayer for relief set forth in the plaintiff's pleadings, calculated exclusive of fees, costs, and interest.[33] Hodge's complaint prayed for money damages "not in excess of $25,000," the jurisdictional limit of the district court. Even though her proofs exceeded that amount, the prayer for relief controls when determining the amount in controversy, and the limit of awardable damages. Because there were no allegations, and therefore no findings, of bad faith in the pleadings, the district court had subject-matter jurisdiction over the plaintiff's claim.

---

[33] See *Krawczyk v Detroit Auto Inter-Ins Exchange*, 117 Mich App 155, 163; 323 NW2d 633 (1982) ("As a general rule, neither costs, attorney fees nor interest is considered in determining the jurisdictional amount."), affirmed in part, reversed in part on other grounds, 418 Mich 231 (1983).

We reverse the Court of Appeals' decision that the district court lacked subject-matter jurisdiction, reinstate the judgment of the district court, and remand to the district court for further proceedings.

Joan L. Larsen
Robert P. Young, Jr.
Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein

## S T A T E   O F   M I C H I G A N

## SUPREME COURT

LINDA HODGE,

       Plaintiff-Appellant,

v

No. 149043

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Defendant-Appellee.

_____

MARKMAN, J. (*concurring*).

At issue here is the subject-matter jurisdiction of the district court, which is exclusive in "civil actions when the amount in controversy does not exceed $25,000.00." MCL 600.8301(1). I join the majority because I agree that "amount in controversy" as used in MCL 600.8301(1) refers to the "prayer for relief set forth in the plaintiff's pleadings . . . ." I further agree that a trial court may be ousted of subject-matter jurisdiction when "fraud upon the court is apparent" from pleadings made in "bad faith." I write separately only to identify circumstances that, in my view, might raise questions concerning "bad faith" pleading and thereby warrant dismissal of a case for lack of jurisdiction. While bad-faith pleadings are rare, when these do occur, they undermine the law of our state and the integrity of our judicial process, and they give rise to conditions at trial in which a party may be unfairly prejudiced.

## I.  FACTS & HISTORY

This case arose when plaintiff sued defendant in the 36th District Court for first-party no-fault benefits after plaintiff had been struck by a vehicle driven by a person insured by defendant.  Plaintiff's complaint alleged bodily injury, including a "closed head injury," "pains in left shoulder, back, neck area, [and] lower back," and a "bruise on [the] left ankle."  She also alleged financial injury, including "expenses for care, recovery, or rehabilitation," "loss of wages," "replacement services," and "attendant care."  In her complaint's prayer for relief, plaintiff sought "damages in whatever amount Plaintiff is found to be entitled not in excess of 25,000.00 . . . ."  The parties then engaged in discovery, and, based on information provided by plaintiff, defendant estimated that plaintiff's claim was worth nearly $250,000.  As a result, defendant filed a motion in limine to prevent plaintiff from offering at trial evidence that her claim exceeded $25,000, but the district court denied that motion.  Plaintiff eventually submitted evidence at trial of injuries exceeding $25,000, including more than $150,000 in attendant-care services.  The jury returned a verdict of $85,957, which the district court duly reduced to $25,000.

Defendant appealed in the Wayne Circuit Court, arguing that the district court lacked subject-matter jurisdiction.  The circuit court concluded that plaintiff claimed damages exceeding $25,000 and thus reversed the district court.  Plaintiff then appealed in the Court of Appeals.  After we directed that Court to consider the case as on leave granted, it agreed with the circuit court, concluding that the district court had been divested of jurisdiction when plaintiff "presented evidence of damages far exceeding [its]

2

$25,000 subject-matter jurisdiction." *Moody v Home Owners Ins Co*, 304 Mich App 415, 431; 849 NW2d 31 (2014). We then granted leave to appeal on two issues:

> (1) whether a district court is divested of subject-matter jurisdiction when a plaintiff alleges less than $25,000 in damages in his or her complaint, but seeks more than $25,000 in damages at trial, i.e., whether the "amount in controversy" exceeds $25,000 under such circumstances, see MCL 600.8301(1); and, if not, (2) whether such conduct nevertheless divests the district court of subject-matter jurisdiction on the basis that the amount alleged in the complaint was made fraudulently or in bad faith. [*Hodge v State Farm Mut Auto Ins Co*, 497 Mich 957, 957-958 (2015).]

## II. ANALYSIS

I agree with the majority's analysis of the two issues on which this Court granted leave. I write separately only to elaborate on my views as to the second issue-- under what circumstances may a prayer for relief, although nominally falling within the district court's statutory "amount in controversy" requirement, nonetheless clearly exhibit bad faith and thereby warrant dismissal.[1] In my view, the relevant jurisdictional inquiry does not automatically come to an end when a plaintiff evidences a willingness to accept an amount less than the jurisdictional maximum; rather, particular circumstances may warrant a district court's inquiring more deeply into whether the amount in controversy was, at the time it was alleged, alleged in bad faith.[2] I emphasize that bad-faith pleadings

---

[1] See, e.g., 20 Am Jur 2d, Courts, § 103 ("The plaintiff's pleadings are generally determinative as to the amount in controversy unless the defendant specifically alleges and proves the amount was pleaded *merely as a sham for the purpose of wrongfully obtaining jurisdiction* or can readily establish that the amount in controversy does not fall within the court's jurisdictional limits.") (emphasis added).

[2] One federal practice treatise states that "[u]nder well-settled principles of pleading, the plaintiff is the master of the statement of his claim." 14AA Fed Prac & Proc Juris (4th ed), § 3702. But the treatise goes on to note that the plaintiff's choice controls only "absent a showing of bad faith." *Id*. In the instant case, because the present record does

3

to obtain subject-matter jurisdiction have been extraordinarily rare-- indeed this and the two cases mentioned in note 3 of this opinion are the first brought to this Court's attention during my tenure, and I believe further inquiry in this regard must be undertaken.[3] For the reasons set forth below, however, I believe it is important that it be made clear, for the integrity of both the legislative and judicial branches, that this Court will not tolerate cases or controversies that ought to be heard in one court being heard in another as a result of a bad-faith pleading.

## A. BAD FAITH

Subject-matter jurisdiction "is the power to hear and determine a cause or matter." *Bowie v Arder*, 441 Mich 23, 36; 490 NW2d 568 (1992) (quotation marks and citation omitted). Because a court has no inherent subject-matter jurisdiction, such jurisdiction must be "conferred upon [the court] by the power which creates it." *Detroit v Rabaut*, 389 Mich 329, 331; 206 NW2d 625 (1973). Jurisdiction accordingly "arises by law," and a court must, notwithstanding a party's stipulation, consent, or waiver, "take notice of the limits of its authority" in order to safeguard the integrity of the judicial process by ensuring that it does not exercise authority it does not have. *Bowie*, 441 Mich at 56. Hence, if the court "recognize[s] its lack of jurisdiction," it must "act accordingly by

---

not sufficiently reflect that plaintiff's allegations were made in bad faith, because "defendant made no allegation of bad faith in the pleadings," and because "there has been no finding of bad faith by the district court," see the majority opinion at note 31, I believe that this Court currently lacks a basis to conclude that plaintiff pleaded in bad faith.

[3] Two other such cases recently have come before the Court. *Moody v Home Owners Ins Co*, 497 Mich 866; 858 NW2d 462 (2015); *Madison v AAA of Mich*, 858 NW2d 463 (2015). Counsel in these two cases is also plaintiff's counsel in the instant case.

4

staying proceedings, dismissing the action, or otherwise disposing thereof, at any stage of the proceeding." *Fox v Bd of Regents of Univ of Mich*, 375 Mich 238, 242; 134 NW2d 146 (1965) (quotation marks and citation omitted); accord *Straus v Governor*, 459 Mich 526, 532; 592 NW2d 53 (1999) ("[A] court at all times is required to question sua sponte its own jurisdiction . . . .") (quotation marks and citation omitted).

This Court has long recognized that when a plaintiff's pleadings are clearly made in bad faith for the purpose of satisfying a trial court's subject-matter jurisdiction, the trial court is ousted of jurisdiction and must dismiss the matter. See *Fix v Sissung*, 83 Mich 561, 563; 47 NW 340 (1890). *Fix* concerned a dispute between neighbors stemming from a gaggle of the plaintiff's geese "trespassing" on the defendant's property. The defendant took possession of the geese and refused to return them unless the plaintiff first paid for property damage caused by the geese and for the cost of feeding them. The plaintiff then sued the defendant in the circuit court for return of the geese. The defendant moved to dismiss for lack of subject-matter jurisdiction, arguing that because the geese were worth less than $100, only a state justice of the peace could hear the case.[4] The plaintiff responded with a declaration that the geese were worth $200, and the trial court permitted the case to proceed. However, it also warned the plaintiff that it would dismiss the case if he "should fail to bring himself within the statute"-- that is, within the jurisdictional limit-- based on the evidence presented at trial. *Id*. Notwithstanding this admonition, the "plaintiff offered no proof [at trial] as to the value

---

[4] Const 1850, art 6, § 18 ("In civil cases justices of the peace shall have exclusive jurisdiction to the amount of one hundred dollars . . . .").

5

of his geese, and strenuously opposed the introduction of evidence by the defendant of their value." *Id*. The trial court admitted such evidence, which showed that the geese were worth only $9, and dismissed the case.

The plaintiff appealed in this Court, arguing that his case fell within the circuit court's jurisdiction because he had alleged the geese's value to be $200, well above the $100 jurisdictional limit of state justices of the peace. We acknowledged that a trial court's jurisdiction may be properly retained on the basis of a good-faith allegation of property value exceeding the jurisdictional limit, even where the value proved at trial does not ultimately exceed the jurisdictional limit. But because the plaintiff's declaration that the geese were worth $200 was "unjustifiable," we concluded that "the value alleged . . . was made in bad faith, and was a fraud upon the court." *Id*. Accordingly, we affirmed the trial court's dismissal. *Fix* thus stands for the proposition that a court subject to a jurisdictional limit may dismiss a complaint for lack of subject-matter jurisdiction, notwithstanding that the jurisdictional allegations are nominally valid, when the court concludes that those allegations were clearly made in bad faith.

As *Fix* demonstrates, a plaintiff pleads in bad faith by pleading an amount in controversy with an intention to present evidence and argument-- i.e., to litigate that case-- in a manner inconsistent with that amount. Such bad faith in the pleadings may be assessed based on evidence subsequently offered at trial, but it is important to recognize that the result in *Fix* was not a product of bad faith exhibited *at trial*, but a function of bad faith evidenced in the *complaint*, which became clearly apparent only after the plaintiff's submissions at trial demonstrated both that he had fabricated the value of the

6

geese in order to satisfy the court's jurisdictional threshold and that he had no initial intention to present a $200 case to the court.

The plaintiff in *Fix* thus inflated the value of his claim to exceed a court's *minimum* jurisdictional limit. By contrast, plaintiff in the instant case may have diminished the value of her claim to avoid exceeding a court's *maximum* jurisdictional limit.[5] Notwithstanding the seeming distinction between *Fix* and the instant case, *Fix* is nonetheless clear, as the majority recognizes, that a court's lawful jurisdiction cannot be premised on a pleading made in bad faith. And there is no logical reason why the *Fix* principle should be limited to jurisdiction obtained by a bad-faith pleading that *overstates* the value of a claim and not also apply to jurisdiction obtained by a bad-faith pleading that *understates* the value of a claim. A plaintiff simply does not have unchecked discretion to create jurisdiction in either way. See, e.g., *In re Return of Forfeited Goods*, 452 Mich 659, 671; 550 NW2d 782 (1996) ("It is well established that [j]urisdiction of the subject-matter cannot be given by consent.") (quotation marks and citation omitted; alteration in original).

---

[5] Plaintiff sought $25,000 in damages, yet discovery and evidence subsequently indicated that her claim may have been worth as much as $250,000. Questions of bad faith aside, why a plaintiff might be prompted to reduce recovery by as much as 90% in order to have it heard in one judicial venue instead of another is itself a matter of considerable consequence for the fairness of the justice system and the equal rule of law, although beyond the scope of inquiry in this case. At the very least, however, I do believe that plaintiff's attorney had a professional and ethical obligation to explain clearly to the client both the rationale for such a substantial reduction in recovery and the likely waiver of the right to sue for the balance of the claim in excess of the jurisdictional maximum. MRPC 1.4(b) ("A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."); see also MRPC 1.7(b).

## B. DISTRICT COURT JURISDICTION

Having set forth *Fix*'s general principle that pleading in bad faith ousts a trial court of jurisdiction, I turn then to the specific question of the jurisdiction of the court at issue in this case, the district court. Our Constitution establishes "one trial court of *general* jurisdiction known as the circuit court" and authorizes the Legislature to further establish "courts of *limited* jurisdiction." Const 1963, art 6, § 1 (emphasis added).[6] The Legislature in response established the district court,[7] which "has *exclusive* jurisdiction in civil actions when the amount in controversy does not exceed $25,000.00."[8] MCL 600.8301(1) (emphasis added). I agree with the majority's straightforward observation that the district court is thereby "limited to deciding cases" within that amount.

By separating disputes according to whether the amount in controversy exceeds or does not exceed $25,000, § 8301(1) reflects the Legislature's intention to classify civil

---

[6] See also MCL 600.605 ("Circuit courts have original jurisdiction to hear and determine all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state.").

[7] MCL 600.8101(1) ("A district court is established in the state.").

[8] Many other states have trial courts whose jurisdictions are limited by dollar thresholds. See Dollar Amount Jurisdiction for Tort, Contract, Real Property, and Small Claims Filings in State Trial Courts, 2010, available at <http://www.courtstatistics.org/~/media/Microsites/Files/CSP/SCCS/2010/Civil-Dollar_Amount_Jurisdiction> [http://perma.cc/69K6-MM8A]; see also 21 CJS, Courts, § 22, pp 31-32 ("Under various constitutional or statutory provisions, superior courts of general jurisdiction are limited in their jurisdiction to cases involving amounts in excess of a specified amount, and inferior courts of limited jurisdiction are limited in their jurisdiction to actions involving amounts between specified amounts.").

cases according to their value.[9]  Accordingly, a case with a value exceeding $25,000 is intended for the circuit court and constitutes a "circuit court case," and a case with a value not exceeding $25,000 is intended for the district court and constitutes a "district court case."  It follows that a plaintiff with a "circuit court case" acts in accordance with the law when he or she pleads the appropriate amount in controversy in the circuit court, and a plaintiff with a "district court case" acts in accordance with the law when he or she pleads the appropriate amount in controversy in the district court.

But, of course, it may come to pass as a result of evolving circumstances, as perhaps it has in the instant case, that a party will plead an amount in controversy not exceeding $25,000 and yet litigate what is a "circuit court case"-- one with a value exceeding $25,000-- in the district court.  Such a pleading would not then reflect the bona fide value of the case.  Nonetheless, such a pleading is not necessarily one made in bad faith because the plaintiff may intend to litigate the "circuit court case" as a "district court case" by presenting only the arguments and evidence needed to demonstrate entitlement to the lower damages reflected by the amount in controversy stated in the pleading.[10]

---

[9] See, e.g., 21 CJS, Courts, § 22, at 32 ("[T]he policy [of specifying a jurisdictional amount] is to force litigants whose disputes involve only comparatively trifling amounts to resort to inferior courts . . . .").

[10] It is also possible that a plaintiff could file a case in the district court in the good-faith, but incorrect, belief that the case has a value not exceeding $25,000 and learn only *later* in the proceedings that the case, in fact, has a value exceeding $25,000.  Such a plaintiff could not be said to have pleaded the amount in controversy in bad faith.  Although the trial court is not ousted of jurisdiction in such circumstances, it *remains* responsible for enforcing its procedural and evidentiary rules, and for exercising its trial-management prerogatives, in a manner that ensures that any inconsistency between the amount in controversy pleaded and the actual value of the case does not prejudice or disadvantage the defendant.

However, when a plaintiff pleads an amount in controversy with the *intention* to litigate a case inconsistent with that amount, the plaintiff has thwarted the Legislature's intention, and the pleading has been made in bad faith. In other words, while the plaintiff may have nominally pleaded a case within the district court's jurisdiction by alleging an amount in controversy not exceeding $25,000, he or she did so with the intention of litigating a "circuit court case" in the district court in contravention of the Legislature's intention that such a case belongs in the circuit court. A plaintiff does not, at least in my judgment, comply with § 8301(1) merely by pleading-- and thus being willing to accept-- an amount in controversy not exceeding $25,000; rather, to avoid a finding of bad faith, the plaintiff must plead with the intention to comply with the legal obligation to litigate that case in a manner consistent with the jurisdictional limit set by the Legislature. So when a plaintiff has a case with a value exceeding $25,000-- that is, a "circuit court case"-- and wishes to litigate in the district court by pleading an amount in controversy not exceeding $25,000, he or she may do so consistent with the Legislature's intentions only by litigating the case *as though* it is valued at the pleaded amount, to wit, as a "district court case."

Pleading an amount in controversy in bad faith not only is incompatible with the Legislature's intention, but also is incompatible with the integrity of the judicial process, which requires the district court to exercise only the power "conferred upon it by" the Legislature. *Rabaut*, 389 Mich at 331. When a plaintiff pleads in good faith, a court can effectively police the boundaries of its jurisdiction simply by examining the face of the pleadings, but when a plaintiff pleads in bad faith, because the pleadings fall only *nominally* within the court's power, the court risks, through no fault of its own,

10

exercising authority that the Legislature did not intend it to exercise. Such an exercise of power is incompatible with the integrity of our judicial process, and when it is a function of the plaintiff's own conduct in the pleadings, the court is justified in finding that he or she has pleaded in bad faith.[11]

As suggested above, litigating a "circuit court case" in the district court is incompatible with both the Legislature's intention and the integrity of the judicial process, and, consequently, a pleading intended to facilitate this as a litigation strategy is a pleading made in bad faith. That bad faith is further exemplified by the sheer incompatibility of a "circuit court case," whose value exceeds $25,000, with the *capabilities* of the district court, which is designed for cases with values not exceeding $25,000. As a general proposition, it is reasonable to assume that the greater the amount of the claim, the more strenuously the parties will litigate, the more evidence will be placed before the jury, and the more numerous and complex will be the issues presented. By distinguishing the jurisdictions of the district court and the circuit court on the basis that the former generally hears cases with lesser amounts in controversy and the latter cases with greater amounts in controversy, the Legislature also presumably intended that

---

[11] A court must continually question its jurisdiction at every "stage of the proceeding." *In re Estate of Fraser*, 288 Mich 392, 394; 285 NW 1 (1939). The district court in particular must be vigilant in assessing its own jurisdiction because under some circumstances both parties may have an interest in litigating a "circuit court case" in the district court-- the plaintiff's own decision would initiate the litigation in that venue, and the defendant might prefer the capped liability that results when a higher-value "circuit court case" is brought in the district court. Under such circumstances, the district court might be alone in upholding the integrity of the legislative and judicial processes. *Id*. ("Courts are bound to take notice of the limits of their authority . . . .").

11

the former generally hears cases of lesser complexity and the latter cases of greater complexity.[12]

This Court's own rules underscore the different levels of complexity inherent in typical "district court cases" and typical "circuit court cases." For example, the discovery rule permits discovery as a matter of course in "circuit court cases" while permitting it only with the court's leave or by the parties' stipulation in district court cases. See MCR 2.302(A)(2). The case-evaluation rule is another example of a rule distinguishing between the two types of cases; the rule authorizes the shortening of deadlines for hearings and party briefs only in the district court. See MCR 2.403(A)(4). Such rules thus, in accordance with the Legislature's intention, treat "district court cases" and "circuit court cases" differently, investing the former, where the amounts of disputes are lower, with procedures designed for more expedited resolution.[13] Because of these and other differences in both court rules and statutes, as well as in the accumulated histories and experiences of the judges on these courts, the circuit court is the court best equipped

---

[12] The Legislature also has directed to the district court criminal matters of relatively lesser complexity. See MCL 600.8311 (giving the district court jurisdiction over "[m]isdemeanors punishable by a fine or imprisonment not exceeding 1 year"; "[o]rdinance and charter violations punishable by a fine or imprisonment"; "[a]rraignments, the fixing of bail and the accepting of bonds"; certain "[p]robable cause conferences"; "[p]reliminary examinations"; and "[c]ircuit court arraignments"). The district court's civil and criminal jurisdictional statutes clearly indicate the Legislature's intention to direct toward that court relatively less complex, less consequential, and more straightforward cases and controversies.

[13] That the district court is intended to hear relatively less complex matters is further evidenced by the fact that the court rules direct to the district court summary landlord-tenant proceedings, MCR 4.201 to MCR 4.202, and small-claims actions, MCR 4.301 to MCR 4.306.

to hear "circuit court cases" and the district court, though being best equipped to hear "district court cases," is correspondingly less well-equipped to hear "circuit court cases." Therefore, a pleading resulting in the litigation of a "circuit court case" in the district court is also less compatible with the district court's innate capabilities.

The district court's jurisdictional limit, and what this requires of a plaintiff, can be appreciated perhaps by considering the following hypothetical. A plaintiff wishes to bring a personal-injury claim of less than $25,000 based on an injury to a single arm. This "one-arm case" may be brought in the district court, and the plaintiff will be free to fully present arguments and evidence as to the full extent of the injury. By contrast, another plaintiff wishes to bring a personal-injury claim that exceeds $25,000 based on injuries to both arms and both legs. In order to recover the full measure of damages, this "four-limb case" must be brought in the circuit court, because that court alone can award relief in an amount exceeding $25,000. The question posed by the instant case is whether the four-limb case, if brought in the district court by pleading an amount in controversy of $25,000, must be dismissed for lack of subject-matter jurisdiction on the basis that such a pleading was clearly made in bad faith. The answer, as suggested by the analysis above, depends on what type of case the plaintiff intended, *when filing his or her pleading*, to litigate. If the plaintiff intended to present evidence of the full extent of his or her injuries-- that is, if he or she intended to present the four-limb case-- then he or she pleaded in bad faith because, despite having pleaded an amount in controversy not exceeding $25,000, he or she intended to litigate a "circuit court case" in the district court. In these circumstances, because the plaintiff's bad faith creates the risk that the district court will hear a "circuit court case," the district court must dismiss the case. A

13

plaintiff intending to litigate the four-limb case in the district court may do so, but only by restricting himself or herself to the presentation of arguments and evidence consistent with the amount in controversy pleaded, and not merely by demonstrating a willingness to accept damages not exceeding $25,000. Thus, the critical inquiry in assessing bad faith is whether the plaintiff clearly intended to litigate a case inconsistent with the amount in controversy pleaded.

However, whether the plaintiff intends to present a case consistent with the amount in controversy pleaded may be a difficult question because the plaintiff's intention to engage in litigation tactics illustrative of bad faith will not often be obvious from the face of the complaint. The trial court therefore must be attentive to assessing the presentation of arguments and evidence that may reasonably communicate that the plaintiff in reality has pursued a "circuit court case" in the district court for the purpose of obtaining some litigation advantage.[14]

---

[14] In the instant case, plaintiff alleged a "closed head injury," "pains in left shoulder, back, neck area, [and] lower back," and a "bruise on [the] left ankle," as well as "expenses for care, recovery, or rehabilitation," "loss of wages," "replacement services," and "attendant care." It is not clear from these allegations that plaintiff's claim had a value exceeding $25,000; nor is it clear that by filing the case she intended to litigate a "circuit court case" in the district court. But had the district court inquired into the issue of bad faith at the *pleadings*, it *may* nonetheless have concluded, similar to the court in *Fix*, that plaintiff clearly had no intention of litigating a case consistent with the amount in controversy pleaded. Such an inquiry *may* have revealed that plaintiff intended from the outset to litigate a "circuit court case" in the district court by presenting evidence of injuries exceeding $25,000. As in *Fix*, evidence of such an intention *might* show that the pleadings themselves were clearly made in bad faith and thus warrant dismissal.

## C.  EVIDENCE OF BAD-FAITH PLEADING

A plaintiff acts in bad faith when he or she litigates a "circuit court case" in the district court for the purpose of obtaining some litigation advantage.  The district court must be vigilant to such conduct, which, because it may suggest the plaintiff's intentions at the time of his or her pleadings, may constitute evidence of the plaintiff's pleading in bad faith.  I offer an illustrative listing of circumstances that may support a finding of bad faith in the amount in controversy pleaded.

### 1.  EXCESSIVE EVIDENCE

One way by which a plaintiff may achieve an unfair advantage by litigating a "circuit court case" in the district court is, despite having pleaded an amount in controversy not exceeding $25,000, by presenting evidence of injuries that *do* exceed $25,000.  Such conduct places the defendant at a disadvantage because although liability is limited to $25,000, the defendant will nonetheless be required to prepare a defense that is not similarly limited.  In the instant case, for example, defendant first learned during discovery that plaintiff's injuries could be as high as $250,000.  Even though plaintiff was willing to accept only $25,000 in damages, defendant had to be prepared to litigate a $250,000 case, i.e., a "circuit court case."  A defendant facing a "circuit court case" must be prepared to defend against a "circuit court case," regardless of the venue in which that case is filed.  This greater preparation may lead to higher legal costs, which may at some point come to be viewed as disproportionate to the liability created by the amount pleaded, and ultimately create undue pressures to settle, where no such pressures may

have been created had the plaintiff litigated a bona fide "district court case."[15]  By taking advantage of the jurisdictional rules, the plaintiff has shifted the defendant's settlement calculus from a traditional evaluation of case strengths and weaknesses to an evaluation of the benefits of litigating in the district court and of the expenditure of "circuit court case" legal costs.

## 2. ABSENCE OF DISCOVERY

Similar unfair advantage in arguing a "circuit court case" in the district court may be gained by the absence of mandatory discovery in the district court.  As a general rule, "parties may obtain discovery by any means provided in [MCR 2.301 *et seq*.]," but "in the district court, no discovery is permitted . . . except by leave of the court or on the stipulation of all parties."  MCR 2.302(A)(1), (2); see also *Ward v McNamara Community Hosp*, 426 Mich 855 (1986).  This "major limitation[] on discovery," 1985 Staff Comment to MCR 2.302, is consistent with the Legislature's intention that the district court hear only cases whose values do not exceed $25,000, many of which may be straightforward enough to render discovery unnecessary.  Moreover, in genuine "district court cases," the absence of discovery often enables parties to avoid the expenditure of time and resources more typically associated with "circuit court cases."

---

[15] I am cognizant that the backdrop of such a case will always be that a $25,000 maximum settlement may be significantly less than the defendant might have faced in the circuit court.  However, once filed in the district court, a case becomes a "district court case," and a defendant should not have to settle on the basis of "circuit court case" considerations.  More importantly, whatever the practical equities facing the two parties, the people of this state are entitled to have the laws of their representatives respected and the jurisdiction of their courts honored.

16

But where the plaintiff seeks to litigate a "circuit court case" in the district court, the absence of discovery could greatly hinder a defending party. When a plaintiff pleads an amount in controversy for the purpose of obtaining district court jurisdiction, yet is allowed to present argument and evidence significantly exceeding $25,000, the defendant could face a hardship because of an inability to learn more about the claim and to present a complete defense. In the absence of discovery, the plaintiff's settlement leverage described above is further magnified because the defendant must then weigh the potentially disproportionate costs of litigating a "circuit court case" against the financial exposure of a "district court case," and must do so without full knowledge of the plaintiff's claim. Thus, not only has the plaintiff gained an unfair advantage by our rules of jurisdiction, he or she has gained an unfair advantage by our rules of procedure. In the instant case, for example, it is possible that plaintiff may have withheld most of, if not all, the details of her injuries and their treatment, because the full extent of plaintiff's injuries-- amounting to as much as $250,000-- came to light only during subsequent discovery. Yet in pleading an amount in controversy to obtain the jurisdiction of the district court, plaintiff may have been motivated at least in part by the possibility that there would be little or no discovery in that court. That such discovery ultimately occurred should not distract from an inquiry into *why* plaintiff, whose case had a potential value of $250,000, pleaded a "district court case" and then appeared to litigate a "circuit court case," for what matters is plaintiff's bad faith at the *pleadings*. Only an amount in controversy pleaded for the purpose of *litigating* a "circuit court case" in the district court ousts the district court of jurisdiction.

### 3.  OFFER OF JUDGMENT

A plaintiff may further obtain an unfair advantage in arguing a "circuit court case" in the district court through the offer-of-judgment rule, MCR 2.405.  Under that rule, one party (the offeror) may make a settlement offer, and if the other party (the offeree) rejects the offer, the offeree may be liable for the offeror's litigation costs unless the offeree improves his or her position at trial.  The rule thereby "encourage[s] settlement and . . . deter[s] protracted litigation." *Hamilton v Becker Orthopedic Appliance Co*, 214 Mich App 593, 596; 543 NW2d 60 (1995) (quotation marks and citation omitted).  But an unfair advantage may also be gained because offers of judgment "are formulated by the parties themselves, creating the possibility that a party may make an offer not in a bona fide attempt to settle the case, but merely to create the possibility of securing an award of costs." *Freeman v Consumers Power Co*, 437 Mich 514, 519 n 8; 473 NW2d 63 (1991).[16]  In particular, an unfair advantage may be gained when a plaintiff files an offer of judgment just below the jurisdictional maximum amount in controversy.  The defendant, in choosing whether to accept or reject the offer, say an offer of $24,900, must

---

[16] The offer-of-judgment rule may be contrasted with the case-evaluation rule, MCR 2.403.  The latter also seeks to shift fees to a party that refuses to accept an offered "case-evaluation award."  But unlike an offer of judgment, which is formulated by the offering party itself and may not always reflect "a bona fide attempt to settle the case," a case-evaluation award is formulated "by three lawyers who are wholly uninvolved in the litigation" and thus not susceptible to a plaintiff's gamesmanship. *Freeman*, 437 Mich at 519 n 8.  Case evaluation is prominent in the circuit court.  See MCR 2.403(A)(2) ("Case evaluation of tort cases filed in circuit court is mandatory . . . ."); ICLE, Michigan Civil Procedure (April 2014), § 14.1, p 1034 ("Most cases in circuit court in which monetary relief is sought are submitted to case evaluation.").  It is not, however, required in the district court.  See MCR 2.403(A)(4).

then consider, not only its own costs of litigating to a verdict, but also the risks of having to pay the plaintiff's costs, for which the defendant will be liable unless it can improve on the $24,900 at trial. But because the plaintiff may be offering evidence in support of injuries well in excess of $25,000, and thereby litigating a "circuit court case" in the district court, the defendant, to achieve a more favorable result at trial, faces the task of having to convince the jury to discredit what may be a substantial amount of plaintiff's evidence in order to reduce the final award to an amount below $24,900. Thus, by submitting an offer of judgment just below the district court's jurisdictional maximum while litigating a "circuit court case," plaintiff may be able to gain an unfair advantage under the jurisdictional and procedural rules by recovering nearly the same amount (either $24,900 or $25,000), regardless of whether defendant accepts or rejects the offer of judgment.

### 4. JURY CONFUSION

Pleading a jurisdictional amount in bad faith in the district court may also entail interference with the jury function. The presentation of evidence of injury typical of a "circuit court case" may, as explained above, unfairly and *directly* disadvantage the defendant. It may also unfairly and *indirectly* disadvantage the defendant by skewing in plaintiff's favor a jury finding of liability, despite the fact that findings of injury and liability are distinct considerations. Professor Brian Bornstein, for example, asserted this result after presenting mock jurors with factual scenarios in which evidence of liability was held constant while evidence of the magnitude of injury varied. Bornstein concluded that fact-finders "will make different [liability] judgments depending upon the severity of

19

the plaintiff[']s injury."[17]   That is, the more abundant the evidence of injury presented, the more likely it is, *all else being equal*, that liability will be found.  This is not only a matter of social-science evidence, but a matter that may be seen as affirmed by ordinary and commonsense understandings of human psychology: where two parties present evidence and seek damages for injuries done to a single arm, the party who is allowed to present evidence, *beyond the scope of the case*, that he or she also suffered injury to the other three limbs will tend to fare better between the two litigants.  Evidence of the injuries to all four limbs might be relevant in a "circuit court case," but in the district court, evidence of injury beyond the one arm might be irrelevant and prejudicially excessive.  Consequently, the plaintiff's advantaging himself or herself of such an effect might well suggest bad faith.[18]

## 5.  JURY INFLUENCING

By litigating a "circuit court case" in the district court, the plaintiff may also take advantage of another cognitive bias, known as the "anchoring effect," that could affect the jury.  According to Professor Daniel Kahneman, this "occurs when people consider a particular value for an unknown quantity before estimating that quantity."[19]  He asserts that the anchoring effect influences decisions even if the "particular value" considered

---

[17] Bornstein, *From Compassion to Compensation: The Effect of Injury Severity on Mock Jurors' Liability Judgments*, Journal of Applied Social Psychology, 28:16 (1998), pp 1477, 1478, 1485.

[18] Defendant here challenged plaintiff's offering of "excessive" evidence of injury as "cumulative."  The motion was opposed by plaintiff and denied by the trial court.

[19] Kahneman, *Thinking, Fast and Slow* (Farrar, Straus, and Giroux, 2011), p 119.

20

has nothing to do with the quantity to be estimated. In the context of a jury trial, the anchoring effect suggests that the jury's final award may sometimes be unduly affected by a large initial presentation of damages.[20] Accordingly, a jury may rely on a plaintiff's initial "anchoring value" to set the award's range and then reach a final award by "discounting."[21] Consider the case, for example, in which a plaintiff who has suffered injury to four limbs is allowed to sue in the district court and the jury apprehends-- perhaps from the presentation of the case or from its own inferences-- that the value of the claim is $100,000. The jury may in the end decide to "discount" the claim by some amount, say 50%, on the basis that the testimony regarding pain and suffering was only partially credible, yielding a final award of $50,000. The court will reduce the $50,000 award to $25,000, in accordance with the plaintiff's pleading and the limits of its own jurisdiction. If, however, the plaintiff had been required to litigate the case in the district court as a "district court case," say one in which he or she had suffered injury only to one arm, the jury's 50% discount would have applied to a $25,000 claim, yielding a final post-discount award of $12,500. While a plaintiff may have no control over the discount a jury applies to the amount the plaintiff seeks to recover, by litigating a "circuit court

---

[20] See, e.g., Chopra, *The Psychology of Asking a Jury for a Damage Award*, Plaintiff Magazine, March 2013, p 7 ("Early research looking at the way jurors used anchoring in the context of jury damage awards suggested that the larger the lump sum request made by plaintiff's counsel, the larger the average award."); Sunstein et al., *Assessing Punitive Damages (With Notes on Cognition and Valuation in Law)*, *Behavioral Law & Economics* (Sunstein ed) (Cambridge University Press, 2000), p 235 ("The amount demanded by the plaintiff also affected the size of the awards, most likely an anchoring effect, which influences the award directly . . . .").

[21] See Sunstein et al., *Assessing Punitive Damages*, p 243.

case" in the district court, a plaintiff separates the value of the claim from the amount of damages sought and potentially facilitates a legal environment in which the anchoring bias inures to his or her advantage.

## III.  CONCLUSION

A party pleads in bad faith by setting forth an amount in controversy within the district court's jurisdiction while intending to litigate a "circuit court case" in the district court.  See *Fix*, 83 Mich at 563.  While bad-faith pleadings are rare, when they do occur, they undermine the law of our state and the integrity of our judicial process, and they give rise to conditions at trial in which a party may be unfairly prejudiced.  In particular, because *each* of the parties may, under some circumstances, view litigating a "circuit court case" in the district court as being within the party's interest, the district court is obligated to be vigilant in identifying bad-faith conduct, and it must be prepared to "question sua sponte its own jurisdiction" in order to preserve the aforementioned values. *Straus*, 459 Mich at 532.  Such jurisdiction may be questioned "at any stage of the proceeding," and when the circumstances clearly demonstrate that jurisdiction has been obtained by a pleading in bad faith, the case must be dismissed.  *Estate of Fraser*, 288 Mich at 394.


Stephen J. Markman


22