# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MJG, Minor.

FOR PUBLICATION
July 11, 2017
9:00 a.m.

No. 332928
Oakland Circuit Court
Family Division
LC No. 2015-832895-AD

Before: SAAD, P.J., and METER and MURRAY, JJ.

SAAD, P.J.

This case arises from the adoption of MJG, a minor child, by the adoptive parents-petitioners under the Adoption Code, MCL 710.21 *et seq.*, and specifically involves the fees paid by petitioners to appellant, Adoption Network Law Center (ANLC), for services performed that may have been related to the adoption process. After a hearing was held regarding the fees, the circuit court denied petitioners' request for approval of $21,400 in fees they paid to ANLC, and the court required that the money be returned. ANLC appeals, and for the reasons set forth herein, we affirm in part, reverse in part, and remand.

## I. NATURE OF THE CASE

As the attorney general correctly points out in its amicus brief, the adoption of children may be used for good or ill. The adoption of children can either be a special opportunity for childless adults who long to be parents and Michigan children who would benefit greatly from a home with caring parents, or, adoption may be used as a cover for baby selling, which is repugnant, unlawful, and contrary to the best interests of the children. And, unquestionably, the focus of Michigan law is to advance the best interests of children, whether the specific issue is custody, termination of parental rights or, as here, adoption.

While courts normally do not interject themselves into contractual matters between competent parties where no party takes exception to how the contract was performed, when the adoption of children is implicated, the Legislature, through its enactment of MCL 710.54, requires courts to review payments made in connection with Michigan adoptions. This legislation seeks to promote the best interests of children by providing for adoption by adoptive parents, while also minimizing the risk of baby selling. To accomplish this dual goal, the Michigan legislature gave courts supervisory power over the adoption process, including, importantly for our analysis, the power to permit or prohibit certain fees paid by adoptive parents "in connection with the adoption."

-1-

Complications arise when, as here, adoptive parents from outside Michigan enter into a contract with a non-Michigan entity to broadcast, on a worldwide or nationwide basis, their desire and availability to adopt a child. The issue is further complicated when many of these contracted-for services are performed outside of Michigan and long before the adoption process begins in Michigan. Yet, the adoptive parents from outside Michigan who find a child to adopt in Michigan, must, as part of the adoption process, submit to a Michigan court a verified accounting of fees paid to the non-Michigan entity. And the statute at issue that outlines which fees are prohibited, mandated, and permissible is complicated and includes criminal penalties for violations of its fee-reporting provisions.

In this case, pursuant to MCL 710.54, the adoptive parents of MJG submitted their list of fees and expenses to the circuit court. And, though both the adoptive parents and ANLC agreed that the $21,400 in fees were acceptable, the circuit court ultimately rejected all of the fees, and ANLC was required to return the money. Although not a party to the proceedings at the circuit court, ANLC filed its appeal in this Court. Again, this case presents a somewhat unusual situation because neither the adoptive parents nor ANLC disputed the legitimacy of the fees or the amount of the fees at the circuit court, and on appeal, they both continue to maintain that the fees were appropriate and the court erred when it disallowed them.[1]

We note that while MCL 710.54(10) requires the circuit court to approve or disapprove "all fees," when considered in context with the rest of the statute, it is clear that the court only has authority to approve or disapprove fees for services that were required to be submitted to the court for approval in the first instance. For fees that fall under MCL 710.54(7)(a), this means that only fees that were for services made "in connection with the adoption" require court approval. Thus, before a court disapproves any submitted fees, it should determine that the fees actually fall under the scope of the statute.

As explained below, although some fees were properly denied, the trial court erred when it rejected certain fees paid because those fees fall outside the purview of the statute. As an example, we preliminarily note that the marketing fees paid by the adoptive parents to broadcast via the Internet their availability to adopt are not fees paid "in connection with the adoption," and

---

[1] Because of the nature of the complicated issues presented, we invited the parties to submit supplemental briefs after oral argument. Additionally, because appellant (ANLC) and appellees (the adoptive parents) maintain the same position on appeal and because the issues presented are of first impression and relate to the important issue of adoption, we invited the State Bar of Michigan's Family Law Section Adoption Committee, the American Academy of Adoption Attorneys, and "[o]ther persons or groups" who are "interested in the determination of the issues presented" to file amicus curiae briefs. *In re MJG/In re BGP/In re JSP*, unpublished order of the Court of Appeals, entered November 22, 2016 (Docket Nos. 332928, 333700, and 333813). We thank Bethany Christian Services, American Academy of Adoption Attorneys, Supporting Members of the State Bar of Michigan Whose Adoption Cases Comprise a Significant Portion of their Legal Practice, and the Attorney General for filing their respective amicus curiae briefs with the Court.

therefore, they are not subject to court approval. Accordingly, we affirm the court's denial of some fees, reverse the denial of others, and remand for clarification regarding other fees.

## II. BASIC FACTS

ANLC is a California law corporation, petitioners reside in Indiana, and the adoption was finalized in Michigan where MJG was born. Before any adoptee was identified for petitioners, petitioners and ANLC entered into an "Adoption Services Agreement," which provided that petitioners would pay a total of $21,400 for ANLC's services. According to testimony, ANLC's costs purportedly are comparable to other agencies and law firms that provide similar services to adoptive parents throughout the United States. The $21,400 fee is divided into the following three phases:

Phase I
    Preliminary and Administrative and Client Liaison Services Fees     $4,000
    Marketing Services Fee     $5,800

Phase II
    Fundamental Readying and Legal Analysis Fee     $5,800

Phase III
    Adoption Opportunity Services Fee     $5,800

The $4,000 fee in Phase I is for preliminary and administrative services and client liaison services. The preliminary and administrative services include consultations with prospective clients, assistance in completing a confidential adoption questionnaire, assessing the prospective client's objectives and challenges, and assistance with other paperwork. The client liaison services include the services of a liaison employee after an individual is retained as a client. The liaison works with other staff to ensure that the client is apprised of the availability of various birth mothers. Marketing services involve efforts to expose the client to birth mothers throughout the United States. ANLC creates a family profile for the client and markets the client through search engine optimization on the Internet, outreach with hard copy materials to clients and pregnancy centers, and Internet advertising and marketing.

The Phase II services of fundamental readying and legal analysis begin when a birth mother desires to meet ANLC's client and includes obtaining the birth mother's medical records, determining her emotional support and financial needs, and assisting her in obtaining prenatal care, if necessary.

The Phase III services occur after the client is introduced to the birth mother: these services include managing the adoption plan, communicating with legal entities, and coaching of the relationship between the birth mother and the clients. ANLC also handles the trust account for birth mother expenses.

As required by the statute in issue, petitioners submitted a verified accounting and a supplement to their verified accounting, which detailed the payments they made to ANLC that

were "related" to the adoption. Notably, petitioners categorized all of ANLC's fees as "attorney fees" on the accounting forms they submitted to the circuit court. Petitioners explained that they used "attorney fees" because ANLC is a law firm, but they were open to using other categories on the form, if the circuit court desired.

At the hearing related to the fees, ANLC's owner and chief counsel, Kristin Yellin, testified by telephone, that while ANLC only represents potential adopting parents, it also provides support services to birth mothers. After Yellin testified, the circuit court noted that, although the fees were "listed under attorney fees" in petitioners' request, the court "didn't hear [Yellin] say one single word about providing legal services[.]"

In its opinion and order, the circuit court first acknowledged that pursuant to MCL 710.54(3)(f), legal fees are an allowable expense that can be charged to adoptive parents. However, the court ruled that none of the fees at issue was recoverable because neither Yellin nor ANLC could charge attorney fees because Yellin was not licensed to practice law in Michigan. The circuit court also held that none of the fees actually pertained to the supply of any legal services. Thus, even if Yellin were admitted to practice law in Michigan, the fees were not legal fees and, accordingly, were not recoverable under MCL 710.54(3)(f). The circuit court also found that ANLC failed to meet the statutory requirements of a "child placing agency," which further precluded it from recovering fees under MCL 710.54(3)(a). Consequently, the circuit court denied petitioners' request for approval of $21,400 in "attorney fees" for ANLC.

### III. STANDARD OF REVIEW

On appeal, we review whether the circuit court properly denied the $21,400 in fees. Because this issue is predicated on the interpretation of a statute, our review is de novo. See *Stanton v City of Battle Creek*, 466 Mich 611, 614; 647 NW2d 508 (2002). "We construe a statute in order to determine and give effect to the Legislature's intent. The goal of statutory interpretation is to discern the intent of the Legislature by examining the plain language of the statute." *Auto-Owners Ins Co v Dep't of Treasury*, 313 Mich App 56, 68-69; 880 NW2d 337 (2015) (quotation marks and citations omitted). When a statute's language is unambiguous, "we give the words their plain meaning and apply the statute as written." *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 202; 731 NW2d 41 (2007).

### IV. MCL 710.54

MCL 710.54 of the Adoption Code governs authorized charges and fees in adoption cases. The interpretation of this statute is an issue of first impression. We quote the language of the statute in full:

(1) Except for charges and fees approved by the court, a person shall not pay or give, offer to pay or give, or request, receive, or accept any money or other consideration or thing of value, directly or indirectly, in connection with any of the following:

(a) The placing of a child for adoption.

-4-

(b) The registration, recording, or communication of the existence of a child available for adoption.

(c) A release.

(d) A consent.

(e) A petition.

(2) Except for a child placing agency's preparation of a preplacement assessment described in section 23f of this chapter or investigation under section 46 of this chapter, a person shall not be compensated for the following activities:

(a) Assisting a parent or guardian in evaluating a potential adoptive parent.

(b) Assisting a potential adoptive parent in evaluating a parent or guardian or adoptee.

(c) Referring a prospective adoptive parent to a parent or guardian of a child for purposes of adoption.

(d) Referring a parent or guardian of a child to a prospective adoptive parent for purposes of adoption.

(3) An adoptive parent may pay the reasonable and actual charge for all of the following:

(a) The services of a child placing agency in connection with an adoption.

(b) Medical, hospital, nursing, or pharmaceutical expenses incurred by the birth mother or the adoptee in connection with the birth or any illness of the adoptee, if not covered by the birth parent's private health care payment or benefits plan or by Medicaid.

(c) Counseling services related to the adoption for a parent, a guardian, or the adoptee.

(d) Living expenses of a mother before the birth of the child and for no more than 6 weeks after the birth.

(e) Expenses incurred in ascertaining the information required under this chapter about an adoptee and the adoptee's biological family.

(f) Legal fees charged for consultation and legal advice, preparation of papers, and representation in connection with an adoption proceeding, including legal services performed for a biological parent or a guardian and necessary court costs in an adoption proceeding.

(g) Traveling expenses necessitated by the adoption.

(4) An adoptive parent shall pay the reasonable and actual charge for preparation of the preplacement assessment and any additional investigation ordered pursuant to section 46 of this chapter.

(5) A prospective adoptive parent shall pay for counseling for the parent or guardian related to the adoption, unless the parent or guardian waives the counseling pursuant to section 29 or 44.

(6) A payment authorized by subsection (3) shall not be made contingent on the placement of the child for adoption, release of the child, consent to the adoption, or cooperation in the completion of the adoption. If the adoption is not completed, an individual who has made payments authorized by subsection (3) may not recover them.

(7) At least 7 days before formal placement of a child under section 51 of this chapter, the following documents shall be filed with the court:

> (a) A verified accounting signed by the petitioner itemizing all payments or disbursements of money or anything of value made or agreed to be made by or on behalf of the petitioner in connection with the adoption. The accounting shall include the date and amount of each payment or disbursement made, the name and address of each recipient, and the purpose of each payment or disbursement. Receipts shall be attached to the accounting.

> (b) A verified statement of the attorney for each petitioner itemizing the services performed and any fee, compensation, or other thing of value received by, or agreed to be paid to, the attorney for, or incidental to, the adoption of the child. If the attorney is an adoption attorney representing a party in a direct placement adoption, the verified statement shall contain the following statements:

>> (*i*) The attorney meets the requirements for an adoption attorney under section 22 of this chapter.

>> (*ii*) The attorney did not request or receive any compensation for services described in section 54(2) of this chapter.

> (c) A verified statement of the attorney for each parent of the adoptee itemizing the services performed and any fee, compensation, or other thing of value received by, or agreed to be paid to, the attorney for, or incidental to, the adoption of the child. If the attorney is an adoption attorney representing a party in a direct placement adoption, the verified statement shall contain the following statements:

>> (*i*) The attorney meets the requirements for an adoption attorney under section 22 of this chapter.

(*ii*) The attorney did not request or receive any compensation for services described in section 54(2) of this chapter.

(d) A verified statement of the child placing agency or the department itemizing the services performed and any fee, compensation, or other thing of value received by, or agreed to be paid to, the child placing agency or the department for, or incidental to, the adoption of the child, and containing a statement that the child placing agency or the department did not request or receive any compensation for services described in section 54(2) of this chapter.

(8) At least 21 days before the entry of the final order of adoption, the documents described in subsection (7) shall be updated and filed with the court.

(9) To assure compliance with limitations imposed by this section and section 55 of this chapter and by section 14 of Act No. 116 of the Public Acts of 1973, being section 722.124 of the Michigan Compiled Laws, the court may require sworn testimony from persons who were involved in any way in informing, notifying, exchanging information, identifying, locating, assisting, or in any other way participating in the contracts or arrangements that, directly or indirectly, led to placement of the individual for adoption.

(10) The court shall approve or disapprove all fees and expenses. Acceptance or retention of amounts in excess of those approved by the court constitutes a violation of this section.

(11) A person who violates this section is guilty of a misdemeanor punishable by imprisonment for not more than 90 days or a fine of not more than $100.00, or both, for the first violation, and of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $2,000.00, or both, for each subsequent violation. The court may enjoin from further violations any person who violates this section.

Contrary to ANLC's argument that only the services listed in MCL 710.54(1)(a)-(e) are required to be approved by the court, the plain language of MCL 710.54(10) requires court approval of "*all* fees and expenses." (Emphasis added.) However, when read in context, "all fees" should not and cannot include fees paid for services that do not fall within the purview of the statute. See *Alvan Motor Freight, Inc v Dep't of Treasury*, 281 Mich App 35, 40; 761 NW2d 269 (2008) (stating that statutes are to be read and interpreted in the context of the whole act). For the types of fees at issue in this appeal, MCL 710.54(7)(a)[2] provides that petitioners are to submit to the circuit court "[a] verified accounting . . . itemizing all payments or disbursements

---

[2] MCL 710.54(7)(b)-(d) cover other types of expenses, which include fees paid to the petitioners' legal counsel, fees paid to the adoptee family, and fees paid to a child placing agency, which are not implicated in this appeal.

of money or anything of value made or agreed to be made by or on behalf of the petitioner *in connection with the adoption*." (Emphasis added.) The Legislature did not define the phrase "in connection with"; therefore we may consult a dictionary to learn the phrase's " 'common and approved usage.' " *Alvan Motor Freight*, 281 Mich App at 43, quoting MCL 8.3a. Under the word "connection," there are many definitions, but one definition is linked to the particular usage here: "relationship in fact."[3] *Merriam-Webster's Collegiate Dictionary* (11th ed). Thus, for fees that fall under MCL 710.54(7)(a), it is clear that the circuit court can only review those expenses that have a relationship in fact with the adoption. In other words, if a fee is for a service that is not related to the adoption itself, then it does not fall within the scope of the statute, and the circuit court has no authority to preclude the expense. Indeed, to do so would amount to an unwarranted abrogation of contractual rights.

Looking further at the statutory scheme, MCL 710.54(1) merely prohibits charges and fees for its enumerated items, unless they are approved by the court. Thus, absent any authorization from a court, these expenses are squarely prohibited. The statute similarly prohibits fees and charges for the activities in MCL 710.54(2), unless they are done for particular purposes and performed by a "child placing agency,"[4] which ANLC admits on appeal that it is not. MCL 710.54(3) lists the charges that an adoptive parent may pay. Because such charges are authorized under subsection (3), the circuit court must approve fees that fall under this subsection if they are for reasonable and actual charges. MCL 710.54(3). Notably, subsection (3) does not use open-ended terms that are equivalent to "such as" or "including," as is commonly used to indicate that a list is not exhaustive; therefore, the list of permissible expenses under this subsection is exclusive. MCL 710.54(4) and (5) list fees that an adoptive parent must pay, and, thus, the circuit court is also required to approve fees that fall under these subsections.

Accordingly, we hold that simply because adoptive parents, as part of their required verified accounting, place certain fees or expenses before the court, does not in and of itself confer authority upon the court to permit or prohibit said fees. Rather, it is incumbent upon the trial court to determine in the first instance whether a submitted or requested fee falls within the purview of the statute. Unquestionably, the fees statute is complex and multilayered and could easily cause prospective adoptive parents to be over-inclusive in their submissions, especially considering that the court has the right to affirm or deny the adoption and the statute also provides criminal penalties for making omissions in the verified accounting.

Therefore, we believe the proper framework for analyzing fees under the statute involves these inquiries:

---

[3] The usage in the statute is "in connection with," and for this definition, the dictionary gives the example, "wanted in [connection] with the robbery." *Merriam-Webster's Collegiate Dictionary* (11th ed).

[4] MCL 710.22(k) defines a "child placing agency" as "a private organization licensed under 1973 PA 116, MCL 722.111 to 722.128, to place children for adoption"

(1) For each of ANLC's fees, do they fall within the scope of the statute? If not, then the court has no authority to disapprove the fees.

(2) If the fees do fall within the scope of the statute, are they prohibited by subsections (1) or (2)?

(3) If they are not prohibited under subsections (1) or (2), are they permitted under subsection (3)?[5]

## V. CIRCUIT COURT'S RELIANCE ON "ATTORNEY FEES" LABEL

The trial court should not have rejected the entirety of the fees simply because petitioners labelled them as attorney fees. Petitioners' label attached to the fees does not end the inquiry nor does it justify the rejection of all fees simply and solely because of the label. Cf. *Adams v Adams*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007) (in the context of determining the gravamen of a plaintiff's complaint, the plaintiff's labels are not controlling). This is especially true because petitioners reasonably explained that they thought that the fees were appropriately called legal/attorney fees because the fees were in fact paid to a law firm. Additionally, when the circuit court questioned whether the fees were truly attorney fees, petitioners offered to revise the form and use other categories if the court desired. It also is important to remember that ANLC did not place the "attorney fees" label on the fees—petitioners did. To hold that petitioners' choice of labels is binding on ANLC, under these circumstances, serves no purpose and is inherently unjust.

## VI. APPLICATION OF MCL 710.54

### A. Preliminary and Administrative and Client Liaison Services Fees

The preliminary and administrative services include consultations with prospective clients, assistance in completing a confidential adoption questionnaire, assessing the prospective client's objectives and challenges, and assistance with other paperwork. The client liaison services include the services of a liaison after an individual is retained as a client. The liaison works with other staff to ensure that the client is apprised of various birth mothers.

First, it is clear that the preliminary and administrative services are not connected to any adoption, much less the specific Michigan adoption of MJG. Instead, these are preliminary services that take place well before any potential adoptees or birth mothers are identified. Indeed, to highlight the fact that these services are not connected with any adoption, these services are done for *prospective* clients. Accordingly, they do not fall within the scope of MCL

---

[5] We need not consider whether the fees are payable under subsections (4) or (5) because ANLC does not claim that these subsections are implicated.

710.54, and the court abused its discretion when it denied the preliminary and administrative fees.

However, the client liaison services fees are another matter, as these services take place after an individual is retained as a client. Further, the services include apprising the client of various birth mothers, which may include petitioners being apprised of MJG's birth mother, and is inherently connected with, or related in fact to, the adoption.

While MCL 710.54(1) does not prohibit the client liaison service fee, MCL 710.54(2) does. MCL 710.54(2)(b) and (c) prohibit fees for "[a]ssisting a potential adoptive parent in evaluating a parent or guardian or adoptee" and "[r]eferring a prospective adoptive parent to a parent or guardian of a child for purposes of adoption." Accordingly, we hold that the child liaison fee to ANLC is prohibited by statute, and the trial court did not err when it disapproved this particular fee.

Therefore, the preliminary and administrative fees should not have been disallowed, but the client liaison services fees were properly disapproved. And while the record shows that the total of both of these fees is $4,000, we do not know how much of the $4,000 is allowable as preliminary and administrative fees. Therefore, on remand, the trial court is to make that determination.

## B. Marketing Services Fee

The primary purpose of the marketing and associated fees is to let potential birth mothers throughout the United States (and perhaps worldwide) know of the desire and qualifications of ANLC's clients, potential adoptive parents. Here, the marketing fees were for services that disseminated to the world at large that petitioners were available to adopt. Importantly, these services were performed without any potential adoptee or birth mother being identified and they were performed with no guarantee that any adoption ultimately would take place. Because the status of any adoption at this time necessarily would have been speculative, we hold that the marketing services provided were not done "in connection with the adoption." Clearly, the marketing fees at issue were not sufficiently connected with the Michigan adoption and therefore the fees were not required to be submitted to the circuit court for its approval. And because the fees were not required to be submitted to the circuit court, it necessarily follows that the circuit court did not have the authority to reject them. Accordingly, the circuit court erred when it disallowed the $5,800 in marketing fees.[6]

## C. Fundamental Readying and Legal Analysis Services Fee

---

[6] ANLC argues on appeal that if the marketing fees were not allowable under the statute, then the statute impermissibly infringes on its First Amendment rights to disseminate protected speech. While it is clear that none of the subparts of MCL 710.54(3) allows for the payment of marketing fees, we need not address ANLC's constitutional concern because MCL 710.54 does not apply to the marketing fees and therefore are not subject to the court's approval.

The fundamental readying and legal analysis services include intake meetings with birth mothers; generating a profile for the birth mother, including her pregnancy-related financial needs; obtaining medical and statistical information on the birth parents and child; directing and assisting the birth mother to have a physical evaluation, screenings, and testing; obtaining the birth mother's medical records; obtaining information on possible birth fathers to assist in the legal termination of his parental rights; comparing the alignment of the preferences of the birth mother and the adoptive parents; analyzing the legal requirements and applicable laws in the clients' and birth mother's state; and presenting an adoption opportunity to the clients.

Because these services are related to the birth mother or the prospective adoption, these services clearly qualify as being connected with the adoption and, accordingly, the court properly ruled on the legality of the fees. Here, some of the services in this phase are prohibited under MCL 710.54(1) or (2). Those services include (1) generating a profile for the birth mother, (2) comparing the alignment of the preferences of the birth mother and the adoptive parents, and (3) presenting an adoption opportunity to the clients. Generating a profile for the birth mother and comparing the preferences of the birth mother to the preferences of the adoptive parents is akin to assisting the birth mother and adoptive parents in evaluating one another. MCL 710.54(2)(a) and (b). Presenting an adoption opportunity to the clients (i.e., prospective adoptive parents) is akin to the "communication of the existence of a child available for adoption," MCL 710.54(1)(b), or "[r]eferring a parent or guardian of a child to a prospective adoptive parent for the purposes of adoption," MCL 710.54(2)(d). Therefore, the fees associated with these particular services are prohibited.

However, we agree with ANLC that the remainder of the services in this section fall under MCL 710.54(3). The intake meetings with birth mothers falls under MCL 710.54(3)(c), as counseling of a parent. Obtaining medical and statistical information about the birth parents and child, obtaining the birth mother's medical records, and obtaining information about the possible birth fathers, fall under MCL 710.54(3)(e), as "[e]xpenses incurred in ascertaining the information required under this chapter about an adoptee and the adoptee's biological family." MCL 710.27(1)(b) and (c) require accounts of the health and genetic history of the child and biological parents to be provided to the prospective adoptive parents.[7] Directing and assisting the birth mother to have a physical evaluation, screenings, and testing also falls under subsection (c), as counseling services to a parent. Finally, analyzing the legal requirements and applicable laws falls under MCL 710.54(3)(f) as legal services.

From the foregoing, it is clear that part of this $5,800 fee was authorized and, thus, the circuit court erred when it disapproved the entire amount. Because the record is silent regarding the apportionment of the $5,800 fee between the approved and disapproved services, we remand for the circuit court to determine the proper allocation.

D. Adoption Opportunity Services Fee

---

[7] Although the information about the biological fathers is intended to assist in the legal termination of his parental rights, his identity is also required to determine his health and genetic history.

-11-

The adoption opportunity services include the arrangement of an introduction between the clients and birth mother; counseling of the clients; referring the clients to the appropriate out-of-state agencies, social workers, and attorneys; managing the adoption plan; communicating with legal entities; providing any subsequently received medical records regarding the birth mother's obstetrical care to the clients; arranging for the birth mother's housing, food, essential pregnancy-related needs, and transportation; administering the Trust Account for the birth mother's expenses; assisting the birth mother in applying for state medical insurance or other health coverage if necessary; securing professional counseling for the birth mother; Birthmother Peer-Mentoring Support Services; and continuing to support and aid the birth mother during and after the adoption process. With the exception of the counseling for petitioners,[8] it is clear that these services were performed in connection with the adoption and therefore are subject to the court's approval.

While MCL 710.54(1) does not prohibit the fees for any of these services, MCL 710.54(2) does prohibit the fee for services related to introducing the birth mother to the clients. Specifically, MCL 710.54(2)(c) and (d) preclude any fee to be paid in conjunction with any referral between prospective adoptive parents and parents for purposes of adoption. Because introducing the birth mother to petitioners is the equivalent of referring the birth mother to the petitioners, the fee for this service is prohibited.

MCL 710.54(3) allows fees for some of these other services. Providing medical records falls under MCL 710.54(3)(e). The birth mother's needs and transportation expenses fall under MCL 710.54(3)(d) and (g). Assistance to the birth mother in applying for insurance, securing professional counseling, mentoring support services, and support to the birth mother falls under subsection (c).

The fees for the remaining services under this section, however, are not allowable under MCL 710.54(3). The services related to referring the clients to agencies, social workers, and attorneys; managing the adoption plan; and communicating with legal entities are not enumerated services under MCL 710.54(3).[9]

Further, the fees for counseling services for the clients, i.e., the adopting petitioners, are not permitted under MCL 710.54(3)(c), as that provision only allows fees for counseling services for the prospective adoptee and the prospective adoptee's parents or guardians. MCL 710.54(3)(c) permits the payment of fees for "[c]ounseling services related to the adoption for *a parent, a guardian, or the adoptee*." (Emphasis added.) ANLC's claim that "a parent" in the statute refers to *any* parent, including a potential adoptive parent, is not persuasive. Looking elsewhere in the statute, it is clear that when the Legislature refers to "a parent," it is referring to

---

[8] As we explain, *infra*, it is not readily apparent if the counseling provided to petitioners is sufficiently connected to the adoption.

[9] There is no indication that the fees charged for referring clients to attorneys and communication with legal entities are necessarily performed by an attorney or would fall under MCL 710.54(3)(f) as legal fees for consultation or legal advice.

the parent of the child who is about to be adopted and not an adoptive parent. For instance, in the immediately preceding subsection, MCL 710.54(2) uses the term "a parent" along with the term "adoptive parent," which demonstrates that these are two distinct concepts. Likewise, MCL 710.54(5) also differentiates between an "adoptive parent" and "the parent" in the same sentence. Thus, it is clear that when the statute uses the phrase "a parent," it is referring to a person who was a parent to the child before the adoption occurred. And when the statute refers to the adopting parents, it instead uses the explicit term, "adoptive parent." As a result, any fees related to counseling services for petitioners were not for "a parent" and are not allowable under MCL 710.54(3)(c).

Yet, we note that despite the fact that counseling *for the adoptive parents* is not payable under MCL 710.54(3), it would be payable if these counseling services did not fall within the purview of the statute by failing to meet the threshold criteria of being performed "in connection with the adoption."[10] We note that there is insufficient information in the record for us to make this evaluation; therefore, on remand the circuit court is to make this determination.

Accordingly, part of this $5,800 fee was authorized, and the circuit court erred when it disapproved the entire amount. Therefore, because the record does not show how this $5,800 fee was apportioned between the various individual services, we remand for the circuit court to make this determination. Again, because the record is not fully developed on what the counseling services *for the petitioners* were actually comprised of, it is not clear if these services fall under the scope of the statute; therefore, the circuit court is to determine whether these counseling services were connected to the adoption such that they fall under the auspice of the statute.

## VII. CONCLUSION

We hold that the circuit court erred when it denied the entirety of the $21,400 fees. Specifically, the court should not have disapproved part of the $4,000 preliminary and administrative fee and client liaison services fee in Phase I because the portion allocated to the preliminary and administrative fee was not subject to court approval. But because the record does not identify how this $4,000 is apportioned between the two aspects of the fee, the circuit court is to determine the correct apportionment. Similarly, the $5,800 marketing fee is allowed because this service does not fall within the purview of the statute, which only governs fees for services that are connected with, or related in fact to, the adoption. Regarding the $5,800 Phase II fee and the $5,800 Phase III fee, some of these fees were properly disallowed but others

---

[10] To be clear, we believe that most counseling services for the adoptive parents likely would fall outside the purview of the statute. Similar to the marketing services discussed earlier, some counseling could have occurred before any adoptee was ever identified. Further, such counseling could in fact address areas such as parenting, which is only incidentally related to the adoption itself. Many a potential parent takes parenting classes to be better equipped for the arrival of a child. Indeed, such a prohibition would prevent an adoptive parent from merely purchasing a self-help or how-to parenting book because that expense would not be enumerated under MCL 710.54(3). In these circumstances, it is hard to see how such "counseling" then would be considered to be connected to the adoption, per se.

-13-

should have been approved. Again, because these Phase II and Phase III fees are not detailed regarding each particular service, the circuit court is to determine the proper dollar amount that should have been approved. Further, a portion of the Phase III fees are for counseling services that were provided to petitioners. While fees for the counseling of adoptive parents is not permitted under MCL 710.54, it is questionable whether these types of counseling fees require court approval in the first instance because the statute only gives a court authority to approve or reject fees that are for services done in connection with the adoption. On remand, the circuit court is to determine whether these counseling services are sufficiently connected with, or related in fact to, the adoption. Consequently, if they are not connected with the adoption, then the circuit court is to not disallow the fees.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. No taxable costs, as no party prevailed in full and appellant and appellees were not opposing each other. MCR 7.219.

/s/ Henry William Saad
/s/ Patrick M. Meter
/s/ Christopher M. Murray